

**ORIGINAL**

1  LYNN M. DEAN, Cal. Bar No. 205562
   Email: deanl@sec.gov
2  BRENT W. WILNER, Cal. Bar No. 230093
   Email: wilnerb@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
5  Lorraine B. Echavarria, Associate Regional Director
   John W. Berry, Regional Trial Counsel
6  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
7  Telephone: (323) 965-3998
   Facsimile: (213) 443-1904

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | SECURITIES AND EXCHANGE      | Case No.  **ED CV15-01792** *VAP*
13 | COMMISSION,                  |
14 |          Plaintiff,          | **COMPLAINT**
15 |     vs.                      |
16 | PAUL MATA, DAVID KAYATTA,    |
17 | MARIO PINCHEIRA, SECURED     | **FILED UNDER SEAL**
18 | CAPITAL INVESTMENTS, LLC,    |
   | LOGOS REAL ESTATE HOLDINGS,  |
   | LLC, LOGOS WEALTH ADVISORS,  |
19 | INC., and LIFETIME ENTERPRISES, |
   | LLC (*dba* LOGOS LIFETIME    |
20 | UNIVERSITY),                 |
21 |          Defendants.         |
22

23

24

25

26

27

28

**ORIGINAL**

1 LYNN M. DEAN, Cal. Bar No. 205562
Email: deanl@sec.gov
2 BRENT W. WILNER, Cal. Bar No. 230093
Email: wilnerb@sec.gov
3
Attorneys for Plaintiff
4 Securities and Exchange Commission
Michele Wein Layne, Regional Director
5 Lorraine B. Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
6 444 S. Flower Street, Suite 900
Los Angeles, California 90071
7 Telephone: (323) 965-3998
Facsimile: (213) 443-1904
8

FILED
CLERK, U.S. DISTRICT COURT

SEP - 3 2015

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ED CV15-01792 VAP

(KKx)

13 SECURITIES AND EXCHANGE
COMMISSION,
14
Plaintiff,
15
vs.
16
PAUL MATA, DAVID KAYATTA,
17 MARIO PINCHEIRA, SECURED
CAPITAL INVESTMENTS, LLC.,
18 LOGOS REAL ESTATE HOLDINGS,
LLC., LOGOS WEALTH
19 ADVISORS, INC., LIFETIME
ENTERPRISES, LLC (*dba* LOGOS
20 LIFETIME UNIVERSITY),
21
Defendants.
22

Case No.

**COMPLAINT**

**FILED UNDER SEAL**

23
24
25
26
27
28

Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) and 77v(a); Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa; and Sections 209(d)-(e) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d)-(e) and 80b-14.

2.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

3.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a); Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because all of the defendants reside in this district.

## SUMMARY

4.      This is an action to halt an ongoing offering fraud orchestrated by defendant Paul Ricky Mata, a former registered investment adviser with an extensive disciplinary history.  Undeterred by his termination from Ameriprise Financial and disciplinary suspensions, Mata formed two unregistered advisory firms, Logos Wealth Advisors, Inc. ("Wealth Advisors") and Lifetime Enterprises, Inc., *dba* Logos Lifetime University ("Lifetime University"), and together with David Kayatta ("Kayatta") and Mario Pincheira ("Pincheira") defrauded investors.

5.      From 2008 through the present, defendants raised over $14 million from over 100 investors from California and several other states, by soliciting investments in two unregistered funds Mata controlled, defendant Secured Capital Investments,

1  LLC ("SCI") and defendant Logos Real Estate Holdings, LLC ("LREH")

2  (collectively, the "Funds").

3      6.    Mata, Kayatta, Wealth Advisors, and Lifetime University are actively

4  soliciting investments in SCI and LREH.  They have induced investors, many of them

5  retirees, into selling their existing securities holdings and investing in the Funds,

6  using online videos, investment seminars promising "Indestructible Wealth," and

7  presentations to church groups promising "Finances God's Way."  Mata, Kayatta,

8  Wealth Advisors, and Lifetime University induced investors by falsely promising

9  "guaranteed" returns, misrepresenting SCI's use of proceeds, and failing to disclose

10  Mata's disciplinary history and his control of SCI to his advisory clients.

11      7.    Mata, Kayatta, Wealth Advisors, and Lifetime University are defrauding

12  investors by misusing investor funds, transferring money from SCI to other

13  businesses controlled by Mata, and otherwise dissipating Fund assets.  They are

14  lulling investors into keeping their money with the Funds by touting their success,

15  despite the fact that the Funds' have not made a profit.  They have also lied to

16  investors who expressed concern about the withdrawal of the Funds' IRA custodian.

17  Mata and Kayatta engaged in further fraudulent conduct by allowing new investors to

18  invest in LREH after the fund's closing date despite knowing that doing so would

19  dilute the accounts of original investors.

20      8.    In addition, Mata, Kayatta, and Pincheira are misappropriating investor

21  money for their personal use by incurring personal expenses on Pincheira's personal

22  American Express account and paying off the balances with SCI investor funds.

23      9.    Finally, the offer and sale of investments in SCI and LREH has never

24  been registered with the SEC, as is required under the registration provisions of the

25  federal securities laws.

26      10.    By engaging in this conduct, Mata, Kayatta, and Pincheira violated, and

27  unless enjoined, will continue to violate the antifraud provisions of the federal

28  securities laws, and Mata, Wealth Advisors, and Lifetime University has violated,

1   and unless enjoined, will continue to violate the provisions prohibiting fraud by an

2   investment adviser.  In addition, all of the defendants have violated, and unless

3   enjoined, will continue to violate, the registration provisions of the federal securities

4   laws.  Therefore, with this action, the SEC seeks emergency relief against defendants,

5   including a temporary restraining order, an asset freeze, accountings, expedited

6   discovery, an order prohibiting the destruction of documents, and the appointment of

7   a receiver over the entity defendants and other entities Mata controls.  The SEC also

8   seeks preliminary and permanent injunctions, disgorgement with prejudgment interest

9   and civil penalties against defendants, and a conduct-based injunction as to Mata,

10  Kayatta, and Pincheira prohibiting them from selling securities to investors or raising

11  funds from investors for any entity they control.

## THE DEFENDANTS

12  11.     **Paul Ricky Mata** is a resident of Upland, California.  Mata is the

13
14  founder and manager of SCI and LREH.

15  12.     From August 1988 until his termination in March 2009, Mata was the

16  registered principal and supervisor for an independent contractor investment advisory

17  branch office of Ameriprise Financial.  Ameriprise terminated Mata for violating

18  company policies by selling away, recommending that clients take out risky loans to

19  finance investments, presenting unapproved seminars, employing individuals without

20  conducting proper background checks, and operating SCI as a competing investment

21  company.  Thereafter, Mata formed Wealth Advisors, where he served as principal

22  and investment adviser representative.

23  13.     On July 30, 2010, the Nevada Secretary of State obtained a cease-and-

24  desist order against Mata, Kayatta, SCI, and Wealth Advisors for soliciting

25  investment in an unregistered security and engaging in unlicensed investment

26  advising.  On March 22, 2011, FINRA suspended Mata from association with any

27  member firm for one-year and fined him $10,000, citing Mata's misconduct at

28  Ameriprise.  Mata also was suspended in 2014 for five months by California

Department of Business Oversight based on FINRA's suspension. Mata previously held Series 7, 9, 10, 24, and 63 securities licenses, which expired in 2012.

14. Despite his suspensions and the lapse of his licenses, Mata continues to serve as the adviser for Wealth Advisors' clients.

15. In addition, Mata founded Lifetime University, which also provides financial planning seminars and investment advisory services.

16. **David Francis Kayatta** is a resident of Claremont, California. Kayatta worked under Mata at Ameriprise until July 2007. In December 2009, Kayatta joined Mata at Wealth Advisors and currently serves as the fund manager for SCI and LREH. In 2010, Kayatta was ordered by the Nevada Secretary of State to cease-and-desist from soliciting Nevada investors in unregistered securities and from engaging in unlicensed investment advisory conduct. Kayatta previously held Series 7, 65, and 66 securities licenses.

17. **Mario Pincheira** is a resident of Alta Loma, California. Pincheira is designated as SCI's director of client relations and property manager, with responsibilities for overseeing the fund's residential and commercial holdings. Pincheira was Wealth Advisors's director of client relations until Mata sold Wealth Advisors, and Pincheira also signed documents as Wealth Advisors's corporate secretary. Pincheira is a co-signatory, along with Mata, to SCI's primary bank account and several affiliated accounts. Pincheira has never held any securities licenses or registrations.

18. **Secured Capital Investments, LLC** is a Nevada LLC headquartered in Rancho Cucamonga, California formed in 2008 and controlled by Mata. Neither SCI, nor any of its securities, have been registered with the Commission. SCI's operative private placement memorandum dated January 2010 ("SCI PPM") describes SCI as a private equity fund. SCI was ordered by the Nevada Secretary of State to cease-and-desist from soliciting Nevada investors to invest in unregistered securities.

19. **Logos Real Estate Holdings, LLC** is a California LLC headquartered in

Rancho Cucamonga, California formed in 2010, also managed by Mata and Kayatta through their entity Logos Management Group, LLC. Neither LREH nor any of its securities are registered with the Commission. LREH's operative private placement memorandum dated August 2011 ("LREH PPM") describes LREH as a private investment fund. In addition to Mata controlling both SCI and LREH, there is extensive overlap between these two entities: SCI and LREH share common assets, and LREH has received loans and expense payments from SCI.

20. **Logos Wealth Advisors, Inc.** is a California corporation headquartered in Rancho Cucamonga, California and was formed by Mata as a California registered investment adviser in 2009. Mata transferred Wealth Advisors to his administrative assistant in March 2012, but continued to exert control over the firm up to and following the administrative assistant's departure from the firm in February 2015. Wealth Advisors is listed in numerous documents as investment adviser or sponsor for SCI and LREH.

21. **Logos Lifetime Enterprises, LLC (*dba* "Logos Lifetime University")** is a Nevada LLC founded and managed by Mata, which offers wealth management educational seminars and investment advisory services for fees ranging from several hundred to tens of thousands of dollars.

## OTHER RELEVANT ENTITIES

22. **Indestructible Peak Management, Inc.** is a California corporation headquartered in Rancho Cucamonga, California. It was formed in 2002 and provides staffing and administrative support to certain Mata entities. Mata is its sole owner and President, and has caused money to be transferred to it from SCI.

23. **Renaissance Management, LLC** is a Nevada LLC headquartered in Rancho Cucamonga, California. It was formed in 2007. Mata has been its managing member from inception and has caused money to be transferred to it from SCI.

24. **9327 Fairway View Place, LLC** is a California LLC headquartered in Rancho Cucamonga, California. It was formed in 2010 and until June 2015 held the

title to 38th Street, despite Defendants' representations to investors that 38th Street was owned by SCI.  Mata has been its managing member since inception.

25.  **Logos Management Group, LLC** is a California LLC headquartered in Rancho Cucamonga, California.  It was formed in 2010 and manages defendant LREH.  Mata has been its managing member since inception, and has caused money to be transferred to it from LREH.

26.  **Logos Insurance Group, Inc.** is a Nevada corporation headquartered in Rancho Cucamonga, California.  It was formed in 2010.  Mata was its President from 2010 to May 2012, and he owns 100% of the company.

27.  **World Gardens Café, LLC** is a Nevada LLC headquartered in Rancho Cucamonga, California.  It was formed in 2011 as a mail order food delivery service.  Mata's owns 70% of the company and has been its managing member since inception and has caused money to be transferred to it from SCI.

28.  **Chef Ravi's Recipes, LLC** is a Nevada LLC headquartered in Rancho Cucamonga, California.  It was formed in 2011 as a supplier for World Gardens Café.  Mata owns 49% of the company and has been its managing member since inception and has caused money to be transferred to it from SCI.

29.  **Destiny With a Purpose, LLC** is a Nevada LLC headquartered in Rancho Cucamonga, California.  It was formed in 2011 to invest in second trust deeds.  Mata has been its managing member since inception.   SCI has an ownership interest in Destiny With A Purpose, LLC.

## THE FRAUDULENT SCHEME

30.  Since at least 2008 through the present, Defendants have raised roughly $14.5 million from approximately 102 United States investors through unregistered securities offerings of two private investment funds, SCI and LREH.  Defendants' solicitations of investors for SCI are ongoing.

**A.   The SCI Offering**

31.  Mata formed SCI in 2008, while working for Ameriprise, and

7

1   subsequently hired Kayatta as the fund's manager and Pincheira as the fund's
2   property manager.

3       32.    Wealth Advisors is the investment advisory firm or sponsor for SCI.
4   Through Mata, it provides investment advice to SCI.

5       33.    Wealth Advisors and Lifetime University, through Mata, provide
6   investment adviser services to investors who invested in SCI.  Both firms also direct
7   clients to invest in SCI.

8       34.    Between 2008 and the present, approximately 90 investors invested
9   approximately $12.5 million in SCI.

10      35.    According to the SCI PPM, SCI is "a private equity firm that allows
11  qualified investors to invest...."  The PPM also states that the Fund was a "real estate
12  investing program," and investing in "government backed tax liens," "asset backed
13  deed certificates," and "distressed commercial and residential properties."

14      36.    For a minimum investment of $200,000, investors purportedly receive
15  two promissory notes paying a 5% annual return and maturing in two years.  The SCI
16  PPM further represents that the annual return is "guaranteed" based on a seven-year
17  reinvestment plan with the rate of return capped at 10%, and with principal repaid at
18  maturity.

19      37.    The SCI PPM claimed exemption from registration pursuant to Rule 506
20  of Regulation D of the Securities Act.  The SCI PPM further indicated that the notes
21  could be sold to no more than 35 non-qualified investors, yet at least 40 appear to
22  have been issued to non-qualified investors.

23      38.    Mata directly solicits investments in SCI during meetings with his
24  advisory clients, during which he performs analyses of their portfolios and then
25  directs the clients to sell their existing securities holdings and invest in the Funds.  He
26  also attracted investors by using online videos, seminars, and church presentations.

27      39.    Mata disseminated the SCI PPM, promissory note agreements, and
28  investor suitability questionnaires to prospective investors.  Certain subscription

1  agreements were returned with incomplete investor suitability forms, and some

2  investors did not complete the investor suitability questionnaires attributed to them at

3  all.  Mata relied on his purported familiarity with the clients to conclude they were

4  qualified investors, rather than verifying their net worth.

5      40.    Defendants' solicitations for SCI are ongoing.

6      41.    SCI maintains an online presence where defendants solicit investors for

7  the Fund, including a website and a YouTube channel on which Kayatta appears

8  touting the SCI Fund.

9      42.    Mata and Kayatta appeared at a three-day seminar in Los Angeles,

10  California in May 2015 called "Indestructible Wealth Bootcamp," where they

11  solicited investors.

12      43.    A website managed by Mata advertises that he plans to offer another

13  three-day "Indestructible Wealth Bootcamp" seminar in Los Angeles California on

14  October 2-4, 2015.

15      44.    Kayatta participates in the Mata-led investment seminars, where Mata

16  introduces him as the Funds' manager.  Kayatta is also identified in the LREH PPM

17  as that Fund's manager.

18      45.    Pincheira also participates in the Mata-led investment seminars, where

19  Mata introduces him as the SCI's property manager.

20  **B.    The LREH Offering**

21      46.    In August 2010, Mata and Kayatta, through Logos Management Group,

22  LLC, formed LREH as a private investment fund providing investors a variable

23  return.

24      47.    Wealth Advisors and Lifetime University, through Mata, provide

25  investment adviser services to investors who invested in LREH.  Both firms also

26  directed clients to invest in LREH.

27      48.    From 2011 through at least 2013, 12 investors invested approximately $2

28  million in LREH.

49.     For a minimum investment of $200,000, investors receive membership interests redeemable after a defined period.  Like SCI, many of the investments were made through self-directed IRAs.

50.     According to the LREH PPM, LREH makes real-estate investments, including underperforming mortgage notes and asset-back deed certificates secured by real property.  Wealth Advisors was listed as LREH's investment adviser responsible for reviewing assets prior to acquisition.

51.     Unlike the SCI PPM, the LREH PPM explicitly identified Mata and Kayatta by name as key personnel, touting their respective 22 and 25 years of experience in financial services.  But the LREH PPM made no mention of Mata or Kayatta's disciplinary history.

52.     As with SCI, Mata disseminated the LREH PPM, which indicated that the interests were exempt from registration pursuant to Rule 506 of Regulation D of the Securities Act and were purportedly limited to accredited investors.  Mata did not verify whether the potential investors were accredited investors.

### C.     Defendants' Misuse and Misappropriation of Investor Funds

53.     Mata, Kayatta, Pincheira, and Wealth Advisors have engaged in additional fraudulent conduct by misusing and misappropriating investors' funds.

#### 1.     Misuse of Funds

54.     Mata, Kayatta, and Wealth Advisors are misusing investor funds in several ways.  They used $250,000 of SCI investor money to make an equity investment in "ieCrowd," a crowdsource funding start-up where Kayatta is a director. This investment was a direct violation of the use of proceeds promised in the SCI PPM, which stated that SCI would invest in real-estate related investments.

55.     Mata, Kayatta, and Wealth Advisors have also dissipated SCI money and assets by commingling them with LREH and other entities controlled by Mata. Although SCI and LREH have separate bank accounts, Mata directed that SCI investor funds be used to pay LREH expenses.  Over $1 million of SCI investor

1   monies have gone to subsidize LREH's operations.  As of early 2014, when LREH's
2   accounting firm resigned, LREH had not repaid SCI for any of the money advanced
3   to it.

4       56.    Mata, Kayatta, and Wealth Advisors also misuse investor money to
5   subsidize other entities that Mata controls.  Mata is a managing member or principal
6   of several businesses that operate out of the same office space as defendants.  These
7   entities are identified at paragraphs 22 through 29 above.  SCI investor funds have
8   been used to pay the rent and expenses of several of these businesses.  For example, in
9   2013 alone, defendants authorized roughly $25,000 in payments to Lifetime University
10   and over $120,000 combined in payments to Indestructible Peak Management, Inc.,
11   Renaissance Management, LLC, and World Gardens Café, LLC.  The SCI PPM did
12   not disclose that investor funds could be used for loans of any kind, and did not
13   disclose that investor funds would be used to pay the expenses of other entities
14   controlled by Mata.

15       57.    Mata, Kayatta, and Wealth Advisors have also encumbered or sold away
16   Fund assets.  For example, as recently as April 2015, SCI claimed as an asset Superior
17   Apartments, a four-unit apartment complex in Excelsior Springs, Missouri.  But
18   property records show that this property was sold to a third-party in a delinquent tax
19   sale in 2014.

20       58.    Another example of asset dissipation is a property known as "38th
21   Street," a condominium complex located in Jacksonville, Florida.  Mata and Kayatta
22   touted the 38th Street property online and in marketing materials as a central
23   component of SCI's portfolio.  In an April 2015 asset summary, SCI stated that 38th
24   Street comprised over 17% of SCI's purported value.

25       59.    SCI purported to have acquired 38th Street in November 2010, but since
26   November 2010, title to 38th Street has been held by 9327 Fairway View Place, LLC
27   ("Fairway"), a separate entity controlled by Mata, which itself had several investors,
28   some of whom have separate direct equity interests in 38th Street.  There is no evidence

1    that the fact that an entity controlled by Mata owned 38th Street was ever disclosed to

2    SCI investors.

3         60.    In addition, in February 2011, LREH acquired the mortgage note to 38th

4    Street for $650,000.  Because LREH had insufficient funds to purchase the note, SCI

5    lent LREH the funds.  Kayatta represented to LREH's former accounting firm that 38th

6    Street was, in fact, an asset belonging to LREH rather than SCI, and Mata conceded to

7    the accountant that LREH owned the "note" on the property.  In April 2012, Mata

8    described the situation to LREH's accountant as follows:

> SCI has lent money to LREH to purchase a note from the bank that SCI owed
> on an apartment building in Florida.  So LREH owns the mortgage now, but
> SCI owes LREH $1,010,183.72.  SCI is in default because it has not paid
> LREH any mortgage payments, after LREH bought the loan.  But LREH still
> owes SCI, for the money it lent LREH to buy the mortgage (on the property
> that SCI owns).  (HELP!).

13   There is no evidence that the fact that LREH held the mortgage on 38th Street, and

14   that SCI lent funds to LREH to purchase that mortgage, was ever disclosed to SCI or

15   LREH investors.

16        61.    Then, in June 2015, Mata caused Fairway to borrow $500,000 from a

17   third-party.  Mata then caused Fairway to grant that third-party a $500,000 mortgage in

18   38th Street and assigned all of the rent and lease payments from the property as security

19   for the loan.

20        62.    Finally, LREH purports to own two assets, Villager North, *aka* Justina

21   Court, an apartment complex in Jacksonville, Missouri, and Superior Park Residential

22   Care Facility, located in in Excelsior Springs, Missouri.  But according to county

23   property records, LREH is not the title holder to either of these properties.  In addition,

24   LREH's accountant questioned the valuations defendants assigned to both properties.

25   Moreover, SCI is also apparently also "invested" in both properties, which led Mata and

26   Kayatta to seek LREH's accountant's opinion on whether the entities could serve as

27   "co-owners."  *Id*. Ex. 38.

28

### 2.   Mata, Kayatta, and Pincheira's Misappropriation

63.   Mata, Kayatta, and Pincheira have also misappropriated monies invested in SCI for their personal use.

64.   Mata and Pincheira are the sole signatories to the SCI bank account where investor monies are deposited.

65.   Because Mata, Kayatta, and SCI had insufficient credit to open a business credit card account, Pincheira added Mata and Kayatta as authorized users on Pincheira's personal American Express account.  In return, Mata directed Pincheira to pay the card balances using SCI's funds.  Mata did not set parameters for legitimate uses of the card, question any of the expenditures, or direct that SCI be reimbursed.

66.   Mata, Kayatta, and Pincheira use the American Express card for personal charges wholly unrelated to SCI business expenses.  The personal charges include dinners, personal travel, entertainment, and cultural events.  The personal charges also ranged from the extravagant (Pincheira's airplane tickets to Chile for $2,246.90) to the mundane (Mata's Netflix account charges).

67.   SCI Investor monies are used to pay the American Express balances that include the personal charges of Mata, Kayatta, and Pincheira.

68.   Between 2012 and 2014, Mata incurred at least $71,693.16 in personal charges that were paid for with SCI investor funds.

69.   Between 2012 and 2014, Pincheira incurred at least $57,169.33 in personal charges that were paid for with SCI investor funds.

70.   Between 2012 and 2014, Kayatta incurred at least $31,529.40 in personal charges that were paid for with SCI investor funds.

71.   In total, between 2012 and 2014, SCI investors paid for at least $160,391.89 in personal charges incurred by Mata, Kayatta, ad Pincheira

72.   In fact, this total may understate the misappropriation as they only include charges Mata, Kayatta, and Pincheira themselves characterized as personal expenses. The underlying American Express records from this time frame reflect numerous other

13

1  charges that appear to have no relationship to the operation of SCI's business.

2      73.    In addition, Mata, Kayatta, and Pincheira also each received monthly
3  payments from SCI in purported consulting fees.

4      74.    Since 2013, Kayatta has received payments ranging from $7,500 to
5  $8,500 per month for supposed consulting fees.

6      75.    Since 2013, Pincheira has received payments of $4,000 per month for
7  supposed consulting fees.

8      76.    Since 2013, Mata has received sporadic payments as high as $25,000 for
9  supposed consulting fees.

10     **D.    Defendants' Fraudulent Lulling of Investors**

11     77.    Mata, Kayatta, Wealth Advisors, and Lifetime University are lulling
12  investors by claiming SCI is performing well in emails, oral communications, and
13  account statements which give the impression that an investor's principal investment
14  is safe, and that the investor's account continues to accrue at the "guaranteed" rate.

15     78.    In fact, SCI has not made a profit since at least 2011.  SCI's bank
16  records reflect that defendants are spending money as quickly as it comes in, and
17  have not added any new revenue generating assets since 2013.  Moreover, investors'
18  requests to redeem out of the funds have been met with delay or unfulfilled.

19     79.    Mata, Kayatta, Wealth Advisors, and Lifetime University have also
20  concealed from investors the concerns raised by the Funds' IRA custodian.

21     80.    Prior to resigning in July 2014, SCI and LREH's IRA custodian sent
22  numerous emails regarding problems with accounts invested in the Funds, including
23  insufficient balances and erratic account fluctuations.  When investors asked why the
24  IRA custodian had resigned, Mata fabricated reasons for the resignation.

25     81.    Mata and Kayatta also engaged in additional fraudulent conduct with
26  respect to LREH by knowingly diluting the value of investments of the original LREH
27  investors by allowing new investors after LREH's closing date of December 31, 2012.
28  The accounts for six investors who had joined LREH prior to the closing date showed

14

1   dramatic reductions in the value of their investments exceeding tens of thousands of

2   dollars during the first quarter of 2013.

3       82.     Mata and Kayatta failed to obtain the consent of the early LREH investors

4   to these late-added investments, despite being aware of the detrimental impact adding

5   investors would have on the initial investors.  Rather than prevent the dilution by

6   adhering to the fund's closing date, Kayatta sought to manipulate the asset valuations

7   to minimize the visibility of the impact on the initial investors.

8       83.     Both LREH's accountant and attorney questioned LREH management

9   regarding the additional investors, yet Mata and Kayatta took no steps to remediate the

10  problem or notify the affected investors.

11  **E.     Mata, Kayatta, Wealth Advisors, and Lifetime University's**

12  **Misrepresentations and Omissions**

13      84.     Mata, Kayatta, Wealth Advisors, and Lifetime University have made

14  numerous other materially false and misleading statements regarding the Funds to

15  induce investments and to prevent investors from withdrawing their money.

16      85.     First, the SCI PPM falsely states that the Fund returns are "guaranteed."

17  Specifically, it states that "[t]he yearly rate of return *guaranteed* under this Offering

18  is based on seven (7) year reinvestment plan with a minimum maturity date of

19  twenty-four (24) months, and a cap rate of return of 10%."  The SCI PPM also

20  provides a chart titled "Guaranteed Rate of Return Schedule," that indicated a

21  $200,000 investment was *guaranteed* to generate a balance of $339,269.30 after 7

22  years.  None of this was true.  Investments in SCI have significant risk of loss.

23  Further, Mata knew that he, Kayatta, SCI, and Wealth Advisors had been sanctioned

24  by the State of Nevada in 2009 for touting SCI's guaranteed returns.

25      86.     Second, the SCI PPM omits material information regarding Mata and

26  Kayatta's control over the Fund.  The SCI PPM also omits Mata's disciplinary

27  history.  Finally, Mata failed to disclose his control over SCI or his disciplinary

28  history in meetings with clients.

87.   Third, although the LREH PPM discloses Mata and Kayatta's involvement in the Fund, and touted that "Paul [Mata]'s 22 years of experience as a Financial Advisor gives him a unique perspective and expertise," it does not disclose Mata or Kayatta's disciplinary history.

88.   Finally, Mata, Kayatta, Wealth Advisors, and Lifetime University are making misrepresentations regarding the use of SCI offering proceeds.  The SCI PPM and SCI's online marketing materials state that the fund invests in real-estate related assets.  The SCI PPM does not disclose that the investor money would be used to pay the expenses of other entities controlled by management or that SCI would invest in businesses unrelated to real estate, such as ieCrowd.

89.   Mata, Kayatta, Wealth Advisors, and Lifetime University's misrepresentations and omissions are material, as they are central to investors' decisions to invest, and to their decisions to keep their money invested in the Funds.

90.   Mata, Kayatta, Wealth Advisors, and Lifetime University knew, or were reckless or negligent in not knowing, that these misrepresentations and omissions were false and misleading when made.

### F.   Mata, Kayatta, SCI, and LREH Offered and Sold the Funds Without Registration or Exemption

91.   Mata, Kayatta, SCI, and LREH did not register with the SEC any of the transactions or securities they offered or sold for either Fund, and the offers and sales were not exempt from registration.

92.   The SCI PPM stated that it would be offered to no more than 35 non-qualified investors, but SCI's documents reflect that at least 40 actual investors were non-qualified.

93.   The LREH PPM also stated that it would be offered to no more than 35 non-qualified investors, but defendants made no effort to verify that the investors were qualified.

94.   In soliciting investors in the Funds, Mata completed investor suitability

1  questionnaires on the investors' behalf without their consent, failed to inquire

2  regarding certain investors' financial condition or sophistication, and failed to

3  maintain documentation of the investors' suitability.

4    **G. Mata, Wealth Advisors, and Lifetime University Acted As**

5      **Investment Advisers To Fraudulently Obtain Investments in the Funds**

6    95. Wealth Advisors, Lifetime University, and Mata acted as investment

7  advisers to individuals who came to Mata to analyze their investment portfolios and

8  make recommendations.  Mata established an investment advisory relationship with

9  these potential clients, then directed them to sell their existing securities holdings and

10  reinvest in SCI or LREH using the misrepresentations detailed above.

11    96. Mata founded Wealth Advisors to provide investment advisory services

12  to clients after his termination from Ameriprise in April 2009.  Mata solicited his

13  former Ameriprise clients to transfer their accounts to Wealth Advisors, without

14  disclosing the reasons for his termination.

15    97. Soon after forming Wealth Advisors in April 2009, Mata was disciplined

16  by regulators including the Nevada Secretary of State, FINRA, the California

17  Department of Business Oversight, and from professional organizations including the

18  Certified Financial Planning Board.

19    98. In early 2012, Wealth Advisors's counsel advised the firm that Mata

20  could not continue to provide financial planning services for a fee without being

21  registered.  In response, Mata "sold" Wealth Advisors to his administrative assistant,

22  while still retaining actual control of Wealth Advisors.  Mata continued to provide

23  investment advice to new and existing clients of Wealth Advisors, including

24  providing advice about market trends and the merits of investing in securities, in

25  particular of investing in SCI and LREH.

26    99. After he "sold" Wealth Advisors to his administrative assistant, Mata

27  founded Lifetime University, which also provides financial planning seminars and

28  investment advisory services.  Through Lifetime University, Mata obtained new

1   clients by offering investment seminars.  Seminar attendees become Mata's clients

2   through subsequent one-on-one financial coaching services that he offers.

3       100.   When meeting with advisory clients, Mata obtains the clients' current

4   holdings and prepares individualized portfolio analyses for them.  Although the

5   portfolio analyses recommend that clients invest in publically-traded securities, Mata

6   instead diverts their money to SCI and LREH.  Mata did not always disclose his

7   control over SCI to his advisory clients at Wealth Advisors or Lifetime University.

8       101.   Mata receives compensation for these unregistered investment advisory

9   services in various ways.  Clients pay Mata for financial planning packages ranging

10   from $750 to $50,000 offered through Lifetime University.  Mata also receives

11   Wealth Advisors's client management fees.

12       102.   As set forth in detail above, in their capacity as investment advisers, Mata,

13   Wealth Advisors, and Lifetime University make material misrepresentations regarding

14   the Funds to clients who depended on them to allocate their portfolios and retirement

15   savings.  They mislead current and prospective clients by asserting that SCI offers

16   guaranteed returns, misrepresent SCI's use of proceeds, mislead clients about the

17   profitability of their investment, and conceal Mata and Kayatta's connection to SCI and

18   omit information about their disciplinary records.  In addition, they have diverted client

19   money to Mata, Kayatta and Pincheira and to other entities that Mata or Kayatta

20   control.

21       103.   Mata, Wealth Advisors, and Lifetime University knew, or were reckless

22   or negligent in not knowing, that their misrepresentations and omissions to their

23   advisory clients were false and misleading when made.

24       104.   Mata, Wealth Advisors, and Lifetime University's misrepresentations

25   and omissions were material, as they were central to investors' decisions to invest,

26   and to their decisions to keep their moneys invested in the Funds.

27

28

### FIRST CLAIM FOR RELIEF

#### Unregistered Offer and Sale of Securities

#### Violations of Section 5(a) and (c) of the Securities Act

#### (against Defendants Mata, Kayatta, SCI, and LREH)

105. The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

106. Defendants Mata, Kayatta, SCI, and LREH, by engaging in the conduct described above, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale.

107. No registration statement had been filed or was in effect as to such securities, and no exemption from registration was applicable.

108. By engaging in the conduct described above, Defendants Mata, Kayatta, SCI, and LREH, violated, and unless restrained and enjoined, will continue to violate, Section 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e.

### SECOND CLAIM FOR RELIEF

#### Fraud in the Offer or Sale of Securities

#### Violations of Section 17(a)(1) and (3) of the Securities Act

#### (against Defendants Mata, Kayatta, and Pincheira)

109. The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

110. Defendants Mata, Kayatta, and Pincheira, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a)    with scienter, employed devices, schemes, or artifices to defraud; or

(b)   engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

111.   By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 17(a)(1) and (3) of the Securities Act, 15 U.S.C. § 77q(a) (1) and (3).

## THIRD CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

### (against Defendants Mata and Kayatta)

112.   The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

113.   Defendants Mata and Kayatta, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, to obtain money or property by means of any untrue statement of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

114.   By engaging in the conduct described above, Defendants Mata and Kayatta violated, and unless restrained and enjoined, will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## FOURTH CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act

### and Rules 10b-5(a) and (c) thereunder

### (against Defendants Mata, Kayatta, and Pincheira)

115.   The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

116.   Defendants Mata, Kayatta, and Pincheira, by engaging in the conduct

20

described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities or interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

      (a)     employed devices, schemes, or artifices to defraud; or

      (b)     engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

117.   By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) and (c).

## FIFTH CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rules 10b-5(b) thereunder

### (against Defendants Mata and Kayatta)

118.   The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

119.   Defendants Mata and Kayatta, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities or interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

120.   By engaging in the conduct described above, Defendants Mata and Kayatta violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

## SIXTH CLAIM FOR RELIEF

### Prohibited Transactions by Investment Advisers

### Violation of Section 206(1) and (2)

### (against Defendants Mata, Wealth Advisors, and Lifetime University)

121.   The SEC realleges and incorporates by reference paragraphs 1 through 104 above.

122.   Defendants Mata, Wealth Advisors, and Lifetime University, by engaging in the conduct described above, while acting as an investment adviser, by use of means or instrumentalities of interstate commerce, directly or indirectly:

      (a)   employed a device, scheme, or artifice to defraud a client or prospective client; or

      (b)   engaged in a transaction, practice, or course of business, which operates as a fraud or deceit upon a client or prospective client.

123.   By engaging in the conduct described above, Defendants Mata, Wealth Advisors, and Lifetime University violated, and unless restrained and enjoined, will continue to violate, Section 206(1) and (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) & (2).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily, and permanently enjoining Defendants Mata, Kayatta, SCI, and LREH, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 5, 15

1  U.S.C. §§ 77e, of the Securities Act.

## III.

3      Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily,
4  preliminarily, and permanently enjoining Defendants Mata, Kayatta, and Pincheira,
5  and their agents, servants, employees, and attorneys, and those persons in active
6  concert or participation with any of them, who receive actual notice of the judgment
7  by personal service or otherwise, and each of them, from violating Section 17(a) of
8  the Securities Act, 15 U.S.C. §§ 77e(a), and Section 10(b) of the Exchange Act, 15
9  U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5.

## IV.

11     Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily,
12 preliminarily, and permanently enjoining Defendants Mata, Wealth Advisors, and
13 Lifetime University and their agents, servants, employees, and attorneys, and those
14 persons in active concert or participation with any of them, who receive actual notice
15 of the judgment by personal service or otherwise, and each of them, from violating
16 Sections 206(1), 206(2), of the Advisers Act, 15 U.S.C. §§ 80b-6(1), (2).

## V.

18     Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily,
19 preliminarily, and permanently enjoining Defendants Mata, Kayatta, and Pincheira
20 and their agents, servants, employees, and attorneys, and those persons in active
21 concert or participation with any of them, who receive actual notice of the judgment
22 by personal service or otherwise, and each of them, from soliciting, accepting, or
23 depositing any monies from actual or prospective investors in connection with any
24 offering of securities pursuant to Section 20(b) of the Securities Act and
25 Section 21(d) of the Exchange Act; provided, however, that such injunction shall not
26 prevent Defendants Mata, Kayatta, and Pincheira from purchasing or selling
27 securities listed on a national securities exchange for their own personal accounts.
28

**VI.**

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of each of the Defendants; prohibiting each of the Defendants from destroying documents; ordering expedited discovery; ordering accountings by each of the Defendants; and appointing a receiver over Defendants SCI, LREH, Wealth Advisors, and Lifetime University, and any entities controlled by them or by Defendants Mata, Kayatta, or Pincheira.

**VII.**

Order Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

**VIII.**

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); and Section 209(e) of the Advisers Act, 15 U.S.C. §80b-9(e).

**IX.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**X.**

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 2, 2015

Respectfully submitted,

Lynn M. Dean
Brent W. Wilner
Attorneys for Plaintiff
Securities and Exchange Commission