1  KATHY BAZOIAN PHELPS (State Bar No. 155564)
2  *kphelps@diamondmccarthy.com*
   DIAMOND MCCARTHY LLP
3  1999 Avenue of the Stars, Suite 1100
   Los Angeles, California 90067-4402
4  Telephone: (310) 651-2997
5
6  *Counsel for Robert P. Mosier,*
   *Permanent Receiver*
7
8              **UNITED STATES DISTRICT COURT**
9
             **CENTRAL DISTRICT OF CALIFORNIA**
10
   SECURITIES AND EXCHANGE          Case No. CV15-01792 VAP (KKx)
11 COMMISSION,
12                                  **MOTION TO: (1) APPROVE**
              Plaintiff,            **RECEIVER'S FINAL REPORT**
13                                  **AND ACCOUNTING;  (2)**
                                    **APPROVE FINAL DISTRIBUTION**
14 PAUL MATA, DAVID KAYATTA,        **PLAN; (3) SELL OR ABANDON**
   MARIO PINCHEIRA, SECURED         **PROPERTY; (4) CLOSE THE**
15 CAPITAL INVESTMENTS, LLC,        **RECEIVERSHIP; (5) DISCHARGE**
   LOGOS REAL ESTATE HOLDINGS,      **THE RECEIVER;  AND (6)**
16 LLC, LOGOS WEALTH ADVISORS,      **AUTHORIZE STORAGE AND**
   INC., and LIFETIME ENTERPRISES,  **DESTRUCTION OF**
17 LLC (*dba* LOGOS LIFETIME        **RECEIVERSHIP RECORDS AND**
   UNIVERSITY),                     **MISCELLANEOUS PROPERTY;**
18                                  **DECLARATION OF ROBERT P.**
                                    **MOSIER**
19
              Defendants
20
                                    Date:   November 6, 2017
21                                  Time:   2:00 p.m.
                                    Place:  First Street Courthouse
22                                          350 W. 1st Street
                                            Courtroom No. 8A, 8th Floor
23                                          Los Angeles, CA 90012
24
25
26
27
28

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND..............................................................................4

      A.    The Preliminary Injunction Order ....................................................4

      B.    Activities of the Receiver Including Disposition of Assets and Investigation
            of Claims and Receivership Entities' Financial Transactions ..................6

            1.    Receiver's Reports and Sales of Assets.................................6

            2.    Remaining Assets ..............................................................8

                  a.    Notes Receivable ....................................................8

                  b.    Destiny With a Purpose .........................................9

                  c.    IE Crowd Stock.......................................................9

                  d.    Landwin ..................................................................9

            3.    Claims Filing and Bar Date Notice to the Taxing Agencies ......10

            4.    Constructive Trust Ruling................................................11

      C.    Receiver's Proposed Final Distribution Plan.................................11

      D.    Receiver's Proposed Closing of the Receivership and Related Relief....................12

II.   THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP
      ESTATE ASSETS SHOULD BE APPROVED.............................................13

      A.    Proposed Classes of Distribution.................................................13

      B.    Previous Fee Award and Holdbacks............................................13

      C.    Current Fee Request ....................................................................14

      D.    Applicable Law Supports the Court's Approval of the Receiver's Plan for
            Final Distribution of the Estate Assets as Reasonable and Appropriate Under
            the Circumstances ........................................................................18

III.  DESTRUCTION OF DOCUMENTS AND OTHER MISCELLANEOUS
      PROPERTY .........................................................................................19

IV.   CLOSE RECEIVERSHIP AND DISCHARGE RECEIVER ...........................19

V.    NOTICE OF MOTION IS APPROPRIATE.....................................................20

VI.   CONCLUSION...........................................................................................20

DECLARATION OF ROBERT P. MOSIER.............................................................. 22

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

# TABLE OF AUTHORITIES

### Cases

*CFTC v. Capital Street Financial, LLC,*
  2010 U.S. Dist. LEXIS 75113 .................................................................................15

*FTC v. Crittenden,*
  (1993) 823 F. Supp. 699 ........................................................................................18

*Norwest Bank Wisc., N.A. v. Malachi Corp.*, (2007) 245 Fed. App'x 488....................................15

*Quilling v. Trade Partners*, (2006) U.S. Dist. LEXIS 101381 .......................................................18

*SEC v. Basic Energy,*
  (2001) 273 F.3d 657 ..............................................................................................18

*SEC v. CapitalStreet*, 2010 U.S. Dist. LEXIS 75133 .......................................................................16

*SEC v. Forex Asset Mgmt. LLC,*
  (2001) 242 F.3d 325 ..............................................................................................18

*SEC v. Hardy,*
  (1986) 803 F.2d 1034 ............................................................................................18

*SEC v. Harris*, 2016 U.S. Dist. LEXIS 51708........................................................................16

*SEC v. HKW Trading LLC,*
  2009 U.S. Dist. LEXIS 77215 .............................................................................15, 16

*SEC v. Wang,*
  (1991) 944 F.2d 80 ................................................................................................18

*SEC v.Elliott,*
  (1992) 953 F.2d 1560 ............................................................................................18

*U.S. Commodity Futures Trading Comm'n v. PrivateFX Glob. One, (2011)* 778 F. Supp. 2d 775  16

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

Robert P. Mosier, as Permanent Receiver for Defendants Secured Capital Investments, LLC, ("Secured Capital") Logos Real Estate Holdings, LLC, ("Logos Real Estate"), Logos Wealth Advisors, Inc., ("Logos Wealth") and Lifetime Enterprises, LLC (dba Logos Lifetime University) ("Lifetime") (collectively, the "Defendants"), as well as Indestructible Peak Management, Inc., Renaissance Management, LLC, 9327 Fairway View Place, LLC, Logos Management Group, LLC, Logos Insurance Group, Inc., World Gardens Café, LLC, Chef Ravi Recipes, LLC, Destiny With a Purpose, LLC, and their subsidiaries and affiliates including Justina Court LLC and Superior Park RCF, LLC (collectively, the "Receivership Entities," and the estate created thereby, the "Receivership Estate"), will and does hereby move the Court for an order for the following relief to: (1) Approve Final Report and Accounting; (2) Approve Final Distribution Plan; (3) Sell or Abandon Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize Destruction of Receivership Records and Miscellaneous Property ("Receivership Closing Motion")  as follows:

1.    Approving the Receiver's Final Report and Accounting, a copy  which is attached hereto as Exhibit "1." The Receiver's completed Standardized Fund Accounting Report is attached hereto as Exhibit "2." The Receiver requests a finding that all actions and activities taken by or on behalf of the Receiver and all payments made by the Receiver in connection with the administration of the Receivership Estate are confirmed and approved.

2.    Approving the Receiver's Distribution Plan and authorizing the Receiver to distribute all assets of the Receivership Estate in the following priority: (a) pay all allowed administrative expenses and approved fees and expenses of his professionals as a first priority payment of assets from the Estate; (b) make a final distribution of all remaining assets of the Receivership estimated to be in the total amount of $2,109,621 to the allowed administrative claims and claims of Investors based on the constructive trust imposed pursuant to prior order, as set forth in the

Receiver's proposed distribution plan attached hereto Exhibit "3"; and (c) subordinate payment of all other claims against the estate, including pre-receivership claims of taxing agencies and pre-receivership claims of general unsecured creditors, to the allowed investor claims and make no distribution thereon until after payment in full of all estate administrative expenses and allowed Investor claims;

3.      Authorizing the Receiver to turn over to the California Department of Financial Services Bureau of Unclaimed Property those distributions to claimants which are not negotiated within sixty (60) days of the date of issuance of the check or are otherwise deemed void, and any other surplus funds. As to those funds to be turned over to the California Department of Financial Services, to the extent possible, the Receiver proposes to remit those funds in the name of the party to whom the distributions were due so that those persons, or their heirs or successors, may claim those funds in the future;

4.      Authorizing the sale of the estate's interest in Landwin Partners Fund I, LLC ("Landwin") pursuant to a right of first refusal.

5.      Authorizing abandonment of the remaining nominal assets, consisting of stock in IE Crowd, promissory notes and liens, the interest in Landwin if not sold, and the interest in Destiny with a Purpose.

6.      Authorizing the Receiver to take all steps necessary or appropriate to complete the administration of the Receivership and its assets in accordance with the relief granted in this Receivership Closing Motion;

7.      Authorizing the Receiver to retain the books and records necessary to support the tax returns filed by the Receiver for a period of five (5) years  and to retain the medical records in Missouri as required by law, and to thereafter destroy those books and records, including authorizing a reserve of $9,500 to pay for the storage and destruction of the records;

8.      Authorizing the Receiver to destroy, or otherwise dispose of, all books, records, computer equipment, other computer related-devices, and other items related

to the Receivership in the Receiver's discretion and at such time as he deems proper (other medical records and than those necessary to support the tax returns filed by the Receiver as set forth above) if within thirty (30) days after written notice to the Commission, the Commission does not take custody of such records and other items;

9.    Discharging the Receiver and his agents, employees, members, officers, independent contractors, attorneys, representatives, predecessors, successors and assignees, and relieving the Receiver and his agents, employees, members, officers, independent contractors, attorneys, accountants, representatives, predecessors, successors, and assignees of all duties, liabilities and responsibilities pertaining to the Receivership previously established in this action effective upon the Receiver filing a Closing Declaration in which he attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership. The Receiver requests an order that he and his agents, employees, members, officers, independent contractors, attorneys, accountants, representatives, predecessors, successors, and assignees are: (i) discharged; (ii) released from all claims and liabilities arising out of and/or pertaining to the Receivership herein; and (iii) relieved of all duties and responsibilities pertaining to the Receivership previously established in this action.

10.    Enjoining all persons from commencing or prosecuting, without leave of this Court, any action against the Receiver or his agents in connection with or arising out of the Receiver's or his agents' services to this Court in this Receivership. Neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the Receiver's administration of this Receivership Estate;

11.    Retaining jurisdiction over any and all matters relating to the Receiver and the Receivership Estate, including any matters relating to the distribution of funds received by the Receiver in connection with his obligations as Receiver or

otherwise received after the Receivership is closed, and to the extent any dispute arises concerning the Receiver's administration of the Receivership Estate or to the extent any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to this Receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim. The Court shall expressly retain jurisdiction for the purpose of (a) implementing and enforcing the provisions of the order on the Receivership Closing Motion, including but not limited to for the purpose of enforcing the above injunctive relief; and (b) reopening the case to administer any subsequently obtained assets;

12.    Closing this Receivership without further order from this Court effective upon the Receiver filing a Closing Declaration in which the Receiver attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership.

## MEMORANDUM IN SUPPORT OF RECEIVERSHIP CLOSING MOTION

### I.    FACTUAL BACKGROUND

#### A.    The Preliminary Injunction Order

On October 8, 2015, this Court entered a Preliminary Injunction Order ("PI Order") [Docket No. 40].  The defendants stipulated to the entry of the PI Order. *See* PI Order, p. 3, ll. 6-8.  Robert P. Mosier was appointed as the permanent receiver pursuant to the PI Order (the "Receiver"). The Receiver replaced the temporary receiver, Claire Schenck, who had previously been appointed on a temporary basis to serve as receiver pursuant to the Court's Temporary Restraining Order and Orders: (1) Freezing Assets; (2) Appointing a Receiver; (3) Prohibiting the Destruction of Documents; (4) Granting Expedited Discovery; and (5) Requiring Accountings; and Order to Show Cause Why a Preliminary Injunction Should not be Granted entered on September 3, 2015 [Docket No. 6].

The PI Order extended the freeze of the assets of the Defendants Secured

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

Capital Investments, LLC ("Secured Capital"), Logos Real Estate Holdings, LLC, ("Logos Real Estate"), Logos Wealth Advisors, Inc., ("Logos Wealth") and Lifetime Enterprises, LLC (*dba* Logos Lifetime University) ("Lifetime"), Paul Mata, David Kayatta, and Mario Pincheira, and each of their subsidiaries and affiliates (collectively, the "Defendants"), as well as Indestructible Peak Management, Inc. ("Indestructible"), Renaissance Management, LLC ("Renaissance"), 9327 Fairway View Place, LLC ("Fairway"), Logos Management Group, LLC ("Logos Management"), Logos Insurance Group, Inc. ("Logos Insurance"), World Gardens Café, LLC ("World Gardens"), Chef Ravi Recipes ("Chef Ravi"), LLC, Destiny With a Purpose, LLC ("Destiny"), and their subsidiaries and affiliates, including Justina Court LLC ("Justina"), Superior Park RCF, LLC ("Superior"), and the PI Order imposed numerous other restrictions on their business and financial activities.

The PI Order also appointed Robert P. Mosier as the permanent Receiver of Secured Capital, Logos Real Estate, Logos Wealth, Lifetime, Indestructible, Renaissance, Fairway, Logos Management, Logos Insurance, World Gardens, Chef Ravi, Destiny, Justin, and Superior (collectively, the "Receivership Entities," and the estate created thereby, the "Receivership Estate"), and charged him with the full powers of an equity receiver over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control of the Receivership Entities. The PI Order imposed a number of duties on the Receiver, including taking custody and control of the Receivership Entities and all of their assets, to investigate the Receivership Entities to locate and account for the Receivership Entities' assets and to take steps necessary and appropriate to preserve the receivership assets.

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

B. **Activities of the Receiver Including Disposition of Assets and Investigation of Claims and Receivership Entities' Financial Transactions**

After his appointment, the Receiver took possession and control over all known assets of the Receivership Entities from the temporary receiver. The Receiver was authorized to engage Diamond McCarthy LLP as General Counsel and Mosier & Company, Inc. as Forensic Accountants as requested in the Receiver's Notice of Motion and Motion for Order for Approving Employment of Diamond McCarthy LLP as General Counsel and Mosier & Company, Inc. as Forensic Accountants [Docket No. 60] (the "Employment Motion"), which was granted by order entered on December 2, 2015 [Docket No. 72]. The Receiver subsequently sought and obtained approval to employ Hagen, Streiff, Newton & Oshiro, Accountants, PC as forensic accountants to investigate and analyze the Receivership Entities' pre-receivership financial transactions. *See* Notice of Motion and Motion for Order for Approving Employment of Hagen, Streiff, Newton & Oshiro, Accountants, PC, as Forensic Accountants, granted by order entered on January 13, 2016 [Docket No. 80].

1. **Receiver's Reports and Sales of Assets**

The Receiver has filed three reports to the Court addressing his activities and summarizing the status of his location and disposition of receivership assets. On December 4, 2015, the Receiver filed his First Status Report on the Operational and Financial Aspects of Secured Capital Investments, LLC [Docket No. 73] (the "First Report"), which set forth his preliminary findings in the case. The Receiver requests that the Court take judicial notice of the Report. The Receiver's First Report provided an overview of the Receiver's initial activities in the case, an accounting update and a status report on the Receiver's initial analysis of the assets of the estate. Since that time, the Receiver and his professionals have continued to gather documentation relating to the assets of the case and to administer those assets.

On January 22, 2016, the Receiver filed his Notice of Motion and Motion for

Order of Sale re: Real and Personal Property by Public Auction Free and Clear of Liens, Claims, and Encumbrances; or in the Alternative, Abandonment of Over-Encumbered Assets [Docket No. 85] ("First Sale Motion"). The First Sale Motion was granted by order entered February 2, 2016 [Docket No. 98]. The assets addressed in the First Sale Motion were the primary assets left at the time the SEC shut down the Receivership Entities' business Those properties were encumbered by numerous and substantial liens, including liens for delinquent taxes as well as substantial consensual mortgage liens.

On May 25, 2016, the Receiver filed the Permanent Receiver's Second Status Report [Docket No. 122] ("Second Report"). The Receiver concluded the auctions of the real and personal properties authorized to be sold pursuant to the First Sale Motion. Two of the real properties scheduled for auction did not sell at the auction. The net proceeds from the sale of the properties sold in the Receiver's initial round of sales totaled $2,120,902.

The Receiver's Second Report identified the remaining assets of the receivership to be addressed by the Receiver, which included two real properties that had not been sold as of that time - a vacant hospital in Excelsior Springs, Missouri and a vacant house in Kentucky. It also identified other intangible assets with uncertain value as to which the Receiver was formulating a disposition plan, including a portfolio of tax liens, an interest in a REIT, stock in IE Crowd, a portfolio of bad loans, and an interest in a portfolio of trust deeds. On September 30, 2016, the Receiver filed a second sale motion, the Motion of Receiver for Order Authorizing: (1) Sale of Miscellaneous  Assets on An As-Is, Where-Is Basis, Subject to All Liens, Claims and Encumbrances; or (2) In the Alternative, Abandonment of Assets  [Docket No. 138] seeking to approve the sale of those real properties and certain additional miscellaneous assets. The second sale motion was granted by the Court's order entered on November 8, 2016 [Docket No. 146]. The sales of all of these assets have been concluded and all tangible and intangible

assets of the estate have been converted to cash or abandoned with Court approval. The Receiver recovered $12,981 in net sale proceeds from the additional assets subject to the second sale motion. The Receiver believes no other assets of the Receivership Entities exist that have not been converted to cash and held as proceeds in the Receivership Estate or abandoned from the estate with Court approval.

The Receiver's Third Status Report [Docket No. 149] identified remaining assets in the receivership estate which were of limited value. The Receiver collected additional funds in connection with the investment in Landwin Partners Fund I, LLC ("Landwin") and believes that there may be an additional distribution from Landwin in the future. However, the amount and timing of any such distribution is speculative and the Receiver does not believe it is appropriate to hold the receivership open for this. The Receiver received an offer for the estate's interest in Landwin and negotiated a sales price of $8,000. Pursuant to the right of refusal offered to Landwin, an investor in Landwin as exercised that right and the Receiver seeks Court approval of the sale of that asset.

By this Motion, the Receiver also seeks to abandon the remaining nominal assets, consisting of stock in IE Crowd, promissory notes and liens, and any interest in Destiny with a Purpose.

### 2. Remaining Assets

#### a. Notes Receivable

The Receiver was made aware of certain notes receivable allegedly owed to SCI. He made repeated demands and collection efforts but unfortunately has determined that any further costs of collection will not yield value for the estate. Accordingly, the Receiver seeks to abandon the following notes receivable:

| | |
|---|---|
| The Jara Group | $100,000 |
| DHL Shipping | $85,000 |
| Telos Breakthrough Principles | $50,000 |
| Telos Breakthrough Principles | $20,000 |

8

| | |
|---|---|
| Chinos Rock and Taco | $33,000 |
| Anthony Cole | $85,000 |
| Anthony Cole | $50,000 |
| Anthony Cole | $35,000 |
| Ethos Digital | $100,000 |
| Sergio Rodriguez | $31,400 |
| AMD Electric | $30,000 |
| Ruben Miranda/Kool Filtration) | $25,000 |
| The Hourglass Art & Wine Gallery | $25,000 |
| The Modern at White Rock Lake | $15,585 |
| Marvin Santamaria | $10,000 |
| Agapay Products Incorporated | $5,000 |
| Identity Design / U-Challenge | unknown |

(collectively, the "Notes Receivable").

### b. Destiny With a Purpose

The Receiver is advised that SCI owns a 22.36% interest in an entity known as Destiny with a Purpose. That entity is not believed to own any assets and the estate has not realized any value from the entity. Accordingly, the Receiver seeks to abandon any interest in Destiny with a Purpose.

### c. IE Crowd Stock

The Receiver is advised that the estate owns an interest in certain stock in Innovation Economy Corporation aka IE Crowd ("IEC"). Additionally, the Receiver located a promissory note dated November 3, 2011 in the amount of $250,000 payable from IEC to SCI. Although the Receiver was advised that the company might go public and thereby create value for the estate, he has learned that a public offering will not take place, that the stock is of minimal value, and that the note is not collectible. Accordingly, the Receiver seeks to abandon any interest in IE Crowd.

### d. Landwin

The Receiver is advised that the estate holds an interest in 1.5 membership

9

units in Landwin. The Receiver has received distributions from this interest in the total amount of $28,650.36. He is advised that a further distribution may be imminent, but such a distribution is uncertain. The Receiver received an offer for the remaining interest in Landwin from an investor. He negotiated a price for the asset of $8,000, which was subject to the right of first refusal required under the terms of the Operating Agreement of Landwin. The Receiver offered the right of first refusal to Landwin, who chose to exercise it. Landwin Fund member Martin H. Valdez offered $8,000, and the Receiver entered into the Purchase and Sale Agreement attached hereto as Exhibit "4" which is subject to Court approval. The Receiver requests Court approval of this sale at this time.

### 3. Claims Filing and Bar Date Notice to the Taxing Agencies

On January 13, 2016, the Receiver filed his Notice of Motion and Motion Order for (1) Establishing Claims Bar Date; (2) Approving Form and Manner of Notice; (3) Approving Proof of Claim Form and Summary Procedures; (4) Staying Post-Receivership Interest; (5) Establishing the Net Investment Method for Existing Investor Claims. The motion was approved, and the bar date was set for May 2, 2016 under the Court's order entered February 2, 2016 [Docket No. 96] ("Claims Administration Order"). The Receiver implemented a claims filing and allowance procedure pursuant to the Claims Administration Order.

Proofs of claim by investors and unsecured creditors filed within the claims bar date have been reviewed by the Receiver and all objections have been resolved. There are 95 investors with allowed claims against the receivership estate totaling $13,989,345.05 (the "Investor Claims").[1] The Receiver also received 12 claims from pre-receivership non-investor creditors whose claims total $21,869.10

---

[1] One late filed claim for Investor Suber has been included in the Investor distribution in the amount of $27,368.50, representing the net investment amount for that claim. Suber was not a known investor and did not receive notice of the claims bar date, so the Receiver requests authority to allow this claim and include it in the distribution.

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

("Unsecured Creditor Claims"). In addition to claims by the Receiver and his professionals for post-receivership services (the "Professional Fees"), there are 7 other outstanding post-receivership administrative claims totaling $27,400.41 (the "Administrative Claims").

On September 22, 2016, the Receiver served a notice to the known taxing agencies with potential claims against the estate that had not been served with the prior claims bar date notice to investors and non-investor creditors ("Tax Claims Notice"). The Tax Claims Notice gave the taxing agencies until December 22, 2016 to file claims with the Receiver, a period of more than 60 days and the equivalent notice period provided to investors and non-investor creditors.  The Receiver received claims from the Internal Revenue Service ("IRS") for $2,162.17, California State Franchise Tax Board for $53,568.33 and the Employment Development Department for $5,605.91.  The total dollar amount of the claims filed by the taxing agencies is $61,336.41 (the "Tax Claims").

### 4.  Constructive Trust Ruling

The Receiver concluded that assets of the Receivership Entities as of the commencement of the receivership should be deemed assets held in constructive trust for the benefit of the investors in the Receivership Entities. The Receiver obtained a determination from the Court that those assets constitute constructive trust assets held for the benefit of the Receivership Entities/investors and that as a result the funds held in the Receivership Estate, after payment of estate administrative expenses, should be distributed to the defrauded investors on their allowed claims.  *See* Order Granting Receiver's Motion for Order (1) Establishing Constructive Trust; and (2) Approving Bar Date Notice for Taxing Agencies entered on February 27, 2017 [Docket No. 164].

### C.  Receiver's Proposed Final Distribution Plan

The Receiver has prepared a proposed Final Distribution Plan as set forth herein which sets forth the funds the Receiver anticipates will be available for

---

11

payment of claims, the categories of claims, and the proposed distribution scheme. A list of the allowed claims by category and the proposed distribution to them is attached here to as Exhibit "3." In summary, the Receiver proposes to pay all allowed administrative expense claims, including $27,400.41 in post-receivership wage claims and all allowed unpaid fees and expenses of the Receiver and his professionals incurred since the last reporting period. The Receiver proposes to pay a total of $437,246 to pay the previously allowed but unpaid professional fees plus the additional fees and costs that have been requested concurrently herewith, and the administrative expense claims. He also seeks permission to reserve $9,500 to pay for the storage of records for 5 years and the destruction of the records. The additional fees and expenses of the Receiver and his professionals are subject to a separate Motion for Fees filed by the Receiver concurrently with this Motion.

There are not sufficient assets to satisfy even the Investor claims. The Receiver's plan proposes a *pro rata* payment of the remaining receivership assets after payment of administrative expenses to the Investors. The claims of the taxing authorities and general unsecured claims, which are subordinate in priority as a result of the constructive trust ruling, would therefore receive no distribution from the estate.

The mechanics of the implementation of the proposed Final Distribution Plan as well as the legal authorities are set forth below.

D. **Receiver's Proposed Closing of the Receivership and Related Relief**

The Receiver has filed a final consolidated tax return for the Receivership Entities based on the finding of a constructive trust, and will retain the records necessary to support those returns. Upon the completion of the Receiver's distribution of estate assets under the approved Final Distribution Plan and other administrative duties necessary or appropriate to wind up the estate, the Receiver seeks an order formally discharging him as receiver. The Receiver will file a Declaration with the Court confirming that the administrative tasks are complete

and the estate is closed.

II.    **THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP ESTATE ASSETS SHOULD BE APPROVED**

   A.    **Proposed Classes of Distribution**

The Receiver is currently holding cash on hand of $2,109,621.

**<u>Class 1: Administrative Professional Fees</u>**

There are actual and estimated remaining professional administrative expenses of the estate of $437,245.79. As detailed in the Receiver Motion for Fees filed concurrently with this Motion, these sums include estimated fees and expenses of the Receiver and his professionals necessary to complete the administration of estate assets, distribute the remaining assets and close the estate.

The Receiver seeks approval of the amounts previously paid to his professionals as well as additional amounts set forth in the fee application filed concurrently herewith herein. The Receiver and his professionals had agreed to a 20% holdback on their previously allowed fees. The holdback amounts and the concurrently requested amounts through the close of this case are as follows:

   B.    **Previous Fee Award and Holdbacks**

The Receiver has already paid Court-approved professional fees and costs in the total amount of $381,929.49 as follows:

| Professional | Fees Paid | Expenses Paid | Holdback |
|---|---|---|---|
| Receiver | $ 67,693.60 | $1,434.99 | $17,275.00 |
| Mosier & Company, Inc. | $ 63,936.00 | | $15,983.50 |
| Diamond McCarthy LLP | $ 82,434.00 | $9,507.10 | $20,608.40 |
| HSNO | $ 37,646.00 | | $7,529.00 |
| Thompson Coburn  LLP | $116,801.90 | $2,475.90 | $0 |
| CliftonLarsenAllen LLP | $  3,352.50 | | $0 |
| **Totals:** | **$371,864.00** | **$13,417.99** | **$61,395.90** |

C. **Current Fee Request**

The accrued fees and costs of the professionals incurred during the reporting period of April 1, 2016, through the close of the case, which are the subject of a pending fee application, are as follows:

The requested compensation and reimbursement is summarized as follows:

| Professional | Fees Incurred | Costs | Total Requested |
|---|---|---|---|
| Receiver | $87,145.30 | $2,489.74 | $89,635.04 |
| Reserve for records | | $9,500.00 | $9,500.00 |
| Mosier & Company Inc. | $141,357.50 | $0 | $141,357.50 |
| Diamond McCarthy LLP | $76,304.80 | $4,938.55 | $81,243.35 |
| HSNO | $7,060.00 | | $7,060.00 |
| LoBuglio & Sigman | $46,654.00 | $400.00 | $47,054.00 |
| **Total Requested** | $358,521.60 | $17,328.29 | $375,849.89 |

Therefore, the total additional amounts to be paid to all professionals for fees, inclusive of prior holdbacks of $61,395.00, is $419,917.50 and reimbursement of costs of $17,328.29.

**Class 2:      Other Administrative Claims**

There is $27.400.41 in outstanding wage claims as identified in Exhibit "3" attached hereto.

After payment of the Class 1 and Class 2 administrative claims, the Receiver estimates there will be approximately $1,666,474 in assets of the receivership estate available for payment to investor claimants.

**Class 3:      Tax Claims**

The Franchise Tax Board and the EDD have both agreed in writing to subordinate their pre-receivership Tax Claims to payment in full to the investors. The IRS provided verbal confirmation of subordination of its $2,162.17 claim but has not provided a writing confirming the subordination.

The Receiver's proposed Final Distribution Plan is founded upon the Court's finding that the assets of the receivership estate are subject to a constructive trust in favor of the investor creditors and that after payment of allowed administrative expenses, the investor creditors are entitled to be paid their allowed claims before receivership assets are distributed to pay claims of taxing agencies or non-investor creditors. The taxing agencies have agreed. Accordingly, the Receiver does not intend to make payment on the Tax Claims. Any post-receivership tax liability that may be due in connection with the Receiver's final tax returns is not subject to this determination; however, the Receiver believes that no such tax liability is due in any event.

### Class 4:      Investor Claims

The Receiver has resolved all objections to the 94 claims of Investors that were timely submitted. Those claims are identified by last name of claimant or name of company and the allowed amount of the claim in Exhibit "3" attached hereto. The allowed Investor Claims total $13,989,345.05. This figure reflects a reduction of over $3.5 million from the initially filed claims in the amount of approximately $17.6 million due to the work of the Receiver and his professionals in obtaining voluntary amendments of claims that were incorrectly filed and the objections to two claims which were filed and sustained by the Court.

The Receiver proposes to distribute the sum of $1,649,975 to the Investor Claims on a *pro rata* basis pursuant to the schedule set forth in Exhibit "3."

Payment of the Investor Claims in a higher priority than other types of creditors is appropriate in an equitable proceeding of this nature.[2] Specifically, in equity receiverships, courts have approved distribution plans which give higher priority to defrauded investors than to general unsecured creditors.[3] In *CFTC v.*

---

[2] *See, e.g., Norwest Bank Wisc., N.A. v. Malachi Corp.*, 245 Fed. App'x 488, 495 (6th Cir. 2007)

[3] *See, e.g., CFTC v. Capital Street Financial, LLC*, 2010 U.S. Dist. LEXIS 75113, at

(footnote continued…)

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

*Capital Street Financial, LLC*, the court approved differing treatment for investors as compared to general creditors as follows:

> The Receivership Estate shall be distributed in the following order:
>
> A. To claims for expenses of the administration of the Receivership Estate, including legal and accounting fees; expenses to preserve the value of assets; and costs of realization and payment of any taxes due on property or income of property of the Receivership Estate incurred during the pendency of the receivership (the "Administrative Claimants");
>
> B. To the return of investments to Investors; and
>
> C. To any General Creditors, should any assets remain in the Receivership Estate.[4]

**Class 5:    Noninvestor Claims**

The claims of Noninvestors that were filed total $21,869.10 and are identified in Exhibit "3" attached hereto. The Receiver proposes to pay the Noninvestor claims only following payment in full to the Investor Claims, which is unlikely. Accordingly, no payment would be made on the Noninvestor Claims at this time.

Courts in equity approve distribution plans that subordinate the Noninvestor Claims to the allowed investor claims.[5] As a matter of equity, courts have concluded

---

(continued)

*4 (W.D.N.C. June 18, 2010); *see also SEC v. HKW Trading LLC,* 2009 U.S. Dist. LEXIS 77215 (M.D. Fla. Aug. 14, 2009) ("Payment to claimants whose property was unlawfully taken from them is given a higher priority than payment to the general creditors.").

[4] *Capitalstreet Financial* at *4.

[5] *See, e.g., Quilling v. Trade Partners,* U.S. Dist. LEXIS 101381 (W.D. Mich. Dec. 1, 2006) ("In receivership proceedings arising out of securities fraud, the class of fraud victims takes priority over the class of general creditors with respect to proceeds traceable to the fraud."); *see also SEC v. CapitalStreet,* 2010 U.S. Dist. LEXIS 75133 (approving plan that return investments to Investors, then to general creditors should any assets remain in Receivership Estate); *SEC v. Harris,* 2016 U.S. Dist. LEXIS 51708 (N.D. Tex. April 18, 2016) (approving modified plan to pay 3 classes: Qualified Professional Claims and Administrative Expenses; Defrauded Investors; and General Creditors Prior to Inception of the Receivership); *U.S. Commodity Futures Trading Comm'n v. PrivateFX Glob. One,* 778 F. Supp. 2d 775, 786 (S.D. Tex. 2011); *SEC v. HKW Trading LLC,* 2009 U.S. Dist. LEXIS 77215, 2009 WL 2499146, at *3 (M.D. Fla. Aug. 14, 2009) (citing Ralph Ewing Clark, *Treatise on the*

(footnote continued...)

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

that returning funds traceable to the fraud back to the defrauded victims first is a reasonable and equitable approach to distribution in a receivership case.

### Summary of Plan

With estimated estate assets available for distribution to investors of $1,649,975 and allowed investor claims of $13,989,345.05, under the Receiver's proposed Final Distribution Plan, all remaining receivership assets would be distributed *pro rata* to investor claimants based on the proportion the specific investor's allowed claim represents of the total allowed investor claims of $13,989,345.05. Attached hereto as Exhibit "3" is a summary of the investor claims, the pro rata percentage of each investor claim and the estimated distribution amount based on the Receiver's estimate of the net assets available for distribution on the investor claims. The Receiver estimates investors will receive a distribution of 11.8% of the amount of their allowed claims. Under the Final Distribution Plan, there would be no assets available for distribution to taxing agencies or non-investor creditors whose claims would be subordinate to the claims of investor creditors based on the constructive trust finding in favor of the investor claimants.

The Receiver requests leave to make this final distribution in the amounts specified on Exhibit "2" within 30 days of the date of the order approving the Final Distribution Plan. The Receiver will mail checks to each claimant holding an Allowed Claim by U.S. Mail. The Receiver proposes that all distribution checks be required to be negotiated within sixty (60) days of the date of issuance and that checks returned without a valid forwarding address or checks not negotiated before the end of the sixty-day period be deemed void. In the event there are checks not negotiated or deemed void, the Receiver requests the authority to turn over those and any other surplus funds to the California Department of Financial Services Bureau of Unclaimed Property.

---

(continued)
*Law and Practice of Receivers* (3d ed. 1959)).

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D. **Applicable Law Supports the Court's Approval of the Receiver's Plan for Final Distribution of the Estate Assets as Reasonable and Appropriate Under the Circumstances**

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *see SEC v. Basic Energy*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). The primary purpose of an equity receivership is to promote the orderly and efficient administration of the estate for the benefit of the creditors. *See Hardy*, 803 F.2d at 1038. The relief requested by the Receiver best serves this purpose.

The Court has wide latitude when it exercises its inherent equitable power in approving a plan of distribution of receivership funds. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (affirming District Court's approval of plan of distribution because court used its discretion in "a logical way to divide the money"); *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, * 1 (W.D. Mich. 2007) ("In ruling on a plan of distribution, the standard is simply that the district court must use its discretion in a logical way to divide the money" (internal quotations omitted)). In approving a plan of distribution in a receivership, "the district court, acting as a court of equity, is afforded the discretion to determine the most equitable remedy." *Forex*, 242 F.3d at 332. The Court may adopt any plan of distribution that is logical, fair, and reasonable. *SEC v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *Basic Energy*, 273 F.3d at 671; *Quilling*, 2007 WL 107669 at *1.

The Receiver believes the proposed final distribution set forth above is logical, fair, and reasonable. The expenses of administration of the receivership incurred for the services of the Receiver and his professionals and those who provided goods, services, and use of property to the Receiver post-receivership as part of the administration of the estate are properly paid as a priority before distribution of the

receivership assets to creditors since the Receiver collected the assets of the receivership estate. *FTC v. Crittenden*, 823 F. Supp. 699, 704 (CD Cal. 1993).

Courts in equity approve distribution plans that subordinate the noninvestor claims to the allowed investor claims. As a matter of equity, courts have concluded that returning funds traceable to the fraud back to the defrauded victims first is a reasonable and equitable approach to distribution in a receivership case. Additionally, this Court's Order Granting Receiver's Motion for Order: (1) Establishing Constructive Trust; and (2) Approving Bar Date Notice for Taxing Agencies [Docket No. 164] approves of such a result.

III.    **DESTRUCTION OF DOCUMENTS AND OTHER MISCELLANEOUS PROPERTY**

In connection with this Receivership, the Receiver accumulated more than 50 boxes of documents and other materials, which are located in the Receiver's office and the offices of the professionals he has retained to assist him in this matter. Accordingly, the Receiver requests the authority to destroy, or otherwise dispose of, all documents and other items relating to the Receivership, in the Receiver's discretion and at such time as he deems proper if within thirty (30) days after written notice to the Commission, the Commission does not take custody of such records or items. The Receiver will hold all medical and tax records that he is required to retain for the requisite amount of time and then thereafter destroy them.

IV.    **CLOSE RECEIVERSHIP AND DISCHARGE RECEIVER**

The Receiver has seized and liquidated all possible meaningful Receivership assets known to the Receiver. All litigation involving the Receiver has been resolved. There is litigation filed by a class of investors against third parties, but the Receiver is not a party to that litigation. There are no remaining unpaid or uncollected judgments. Further, with the payment of the accrued and final fees and costs of the Receivership and the final distribution to claimants as requested herein and in the Motion for Fees, all assets of the Receivership will be subject to disbursement. As such, the Receiver will have completed his responsibilities under the Orders

Appointing Receiver and respectfully requests that the Court enter an order, in substantially the form of the proposed order attached as Exhibit "3," that closes the Receivership and discharges the Receiver without further order from this Court effective upon the Receiver filing a Closing Declaration in which he attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership. The Receiver requests the Court's order discharge him and his agents, employees, members, officers, independent contractors, attorneys and representatives and relieve the Receiver, his agents, employees, members, officers, independent contractors, attorneys and representatives of all duties, liabilities, and responsibilities pertaining to this Receivership.

## V.    NOTICE OF MOTION IS APPROPRIATE

The Receiver has provided notice of this Motion pursuant to Local Rule 66-7 and requests an order finding that such notice is deemed sufficient if completed as described as follows:  At least 40 days prior to the hearing on the Motion, the Receiver shall mail and/or email the form of Notice attached hereto as Exhibit "6" to all known claimants, including Investors, NonInvestors, taxing authorities and insiders. The Notice recites that the Receiver will post the Notice as well as the Motion on his website at www.ReceivershipofSCI.com. The Receiver shall post the Notice and the Motion on his website concurrently with the filing of the Notice and Motion.

The Receiver further requests that notice of any modifications to the Receiver's original Proposed Order is deemed sufficient and approved if a copy of the Court's Order on the Motion is posted on his website within fourteen (14) calendar days of being issued.

## VI.    CONCLUSION

The Receiver respectfully requests that the Court: (1) approve the Receiver's Final Report and Accounting; (2) approve the Receiver's Distribution Plan; (3)

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

1  authorize the sale and abandonment of property; (4) close the Receivership; (5)

2  discharge the Receiver; and (6) authorize retention of certain records and the

3  destruction of Receivership records and miscellaneous property. The Receiver

4  requests all other appropriate relief.

5

6  DATED: September 26 , 2017          DIAMOND McCARTHY LLP

7                                     By:   /s/ *Kathy Bazoian Phelps*
                                           Kathy Bazoian Phelps
8                                          Counsel for Robert P. Mosier
                                           Permanent Receiver
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF ROBERT P. MOSIER

I, Robert P. Mosier, declare and affirm as follows:

1.      I am the duly appointed Receiver in this matter and have first-hand knowledge about the following facts except where otherwise noted.  If called upon to testify, I could do so competently.

2.      I have reviewed and participated in the preparation of the Motion to: (1) Approve Final Report and Accounting; (2) Approve Final Distribution Plan; (3) Sell or Abandon Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize Destruction of Receivership Records and Miscellaneous Property ("Receivership Closing Motion").

3.      My Final Report and Accounting is attached hereto as Exhibit "1," which describes my activities in this case and the financial reporting of my activities.

4.      The Standardized Fund Accounting Report required by the SEC is attached hereto as Exhibit "2."

5.      My proposed Distribution Plan is attached hereto as Exhibit "3." I believe that this plan is reasonable and achieves a fair and equitable result under the circumstances in this case. The Plan proposes to (a) pay all allowed administrative expenses and approved fees and expenses of my professionals as a first priority payment of assets from the estate; and (b) make a final distribution of all remaining assets of the Receivership estimated to be in the total amount of $1,672,375.21 to the allowed administrative claims and claims of Investors based on the constructive trust imposed pursuant to prior order. Since Investors will not receive all of the amounts owed to them, there will be insufficient funds to pay any other classes of creditors. The taxing agencies have agreed to subordinate their claims to payment to Investors and accordingly will not be receiving any payment, nor will general unsecured creditors. This result is in line with the constructive trust finding that the Court previously made in this case, finding that the funds I am holding are held in constructive trust for the benefit of the investors.

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

6.    I was made aware of certain notes receivable allegedly owed to SCI. I and my counsel made repeated demands and collection efforts but unfortunately, I have determined that any further costs of collection will not yield value for the estate. Accordingly, I seek to abandon the following notes receivable:

| | |
|---|---|
| The Jara Group | $100,000 |
| DHL Shipping | $85,000 |
| Telos Breakthrough Principles | $50,000 |
| Telos Breakthrough Principles | $20,000 |
| Chinos Rock and Taco | $33,000 |
| Anthony Cole | $85,000 |
| Anthony Cole | $50,000 |
| Anthony Cole | $35,000 |
| Ethos Digital | $100,000 |
| Sergio Rodriguez | $31,400 |
| AMD Electric | $30,000 |
| Ruben Miranda/Kool Filtration) | $25,000 |
| The Hourglass Art & Wine Gallery | $25,000 |
| The Modern at White Rock Lake | $15,585 |
| Marvin Santamaria | $10,000 |
| Agapay Products Incorporated | $5,000 |
| Identity Design / U-Challenge | unknown |

(collectively, the "Notes Receivable").

7.    I am advised that SCI owns a 22.36% interest in an entity known as Destiny with a Purpose. That entity is not believed to own any assets and the estate has not realized any value from the entity. Accordingly, I seek to abandon any interest in Destiny with a Purpose.

8.    I am advised that the estate owns an interest in certain stock in Innovation Economy Corporation aka IE Crowd ("IEC"). Additionally, I located a promissory note dated November 3, 2011 in the amount of $250,000 payable from IEC to SCI. Although I am advised that the company might go public and thereby

23

create value for the estate, I have learned that a public offering will not take place, that the stock is of minimal value, and that the note is not collectible. Accordingly, I seek to abandon any interest in IE Crowd.

9. I am advised that the estate holds an interest in 1.5 membership units in Landwin Partners Fund I, LLC ("Landwin"). I have received distributions from this interest in the total amount of $28,650.36. I am advised that a further distribution may be imminent, but such a distribution is uncertain. I received an offer for the remaining interest in Landwin from an investor. I negotiated a price for the asset of $8,000, which was subject to the right of first refusal required under the terms of the Operating Agreement of Landwin. I offered the right of first refusal to Landwin, who chose to exercise it. Landwin Fund member Martin H. Valdez offered $8,000, and the Receiver entered into the Purchase and Sale Agreement attached hereto as Exhibit "4" which is subject to Court approval. I request Court approval of this sale at this time.

10. In connection with this Receivership, I have accumulated more than 50 boxes of documents and other materials, which are located in my office and the offices of the professionals I have retained to assist me in this matter. Accordingly, I request the authority to destroy, or otherwise dispose of, all documents and other items relating to the Receivership, in my discretion and at such time as I deem proper if within thirty (30) days after written notice to the Commission, the Commission does not take custody of such records or items. I will hold all medical and tax records that I am required to retain for the requisite amount of time and then thereafter destroy them. I request that the total sum of $9,500.00 be reserved to pay for the storage and destruction of these records.

11. I have seized and liquidated all possible meaningful Receivership assets known to me. There is no pending litigation involving the estate or estate assets. There is litigation filed by a class of investors against third parties, but I am not a party to that litigation. There are no remaining unpaid or uncollected judgments.

Further, with the payment of the accrued and final fees and costs of the Receivership and the final distribution to claimants as requested herein and in the Motion for Fees, all assets of the Receivership will be subject to disbursement. As such, I will have completed my responsibilities under the Orders Appointing Receiver and respectfully request that the Court enter an order, in substantially the form of the proposed order attached as Exhibit "5," that closes the Receivership and discharges me as the Receiver without further order from this Court effective upon my filing a Closing Declaration in which I attest that I have completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership. I request the Court's order discharge me and my agents, employees, members, officers, independent contractors, attorneys and representatives and relieve me, my agents, employees, members, officers, independent contractors, attorneys and representatives of all duties, liabilities, and responsibilities pertaining to this Receivership.

12. I will mail and/or email the form of Notice attached hereto as Exhibit "6" to all known claimants, including Investors, NonInvestors, taxing authorities and insiders. The Notice recites that the Receiver will post the Notice as well as the Motion on his website at www.ReceivershipofSCI.com. The Receiver shall post the Notice and the Motion on his website concurrently with the filing of the Notice and Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. This declaration is executed on the 16 day of September 2017 in Costa Mesa, California.

Robert P. Mosier
Federal Equity Receiver for Secured Capital Investments, LLC and its subsidiaries and affiliates

25

EXHIBIT 1

Robert P. Mosier
Craig M. Collins, CPA
Ryan Baker, Senior Financial Analyst
MOSIER & COMPANY, INC.
3151 Airway Avenue, Suite A-1
Costa Mesa, California    92626
Telephone:      (714) 432-0800
Facsimile:      (714) 432-7329
E-Mail:    Rmosier@Mosierco.com

Court Appointed Receiver

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    **Plaintiff,**<br><br>vs.<br><br>**PAUL MATA, DAVID KAYATTA, MARION PINCHEIRA, SECURED CAPITAL INVESTMENTS, LLC, LOGOS REAL ESTATE HOLDINGS, LLC, LOGOS WEALTH ADVISORS, INC., and LIFETIME ENTERPRISES, LLC (dba LOGOS LIFETIME UNIVERSITY),**<br><br>                    **Defendants.** | Case No: 5:15-cv-01792-VAP-KK<br>Assigned for all purposes to the Honorable Virginia A. Philips<br><br>**PERMANENT RECEIVER'S FINAL ACCOUNT AND REPORT; DECLARATION OF RECEIVER, ROBERT P. MOSIER.**<br><br>Date:    November 6, 2017<br>Time:    2:00 PM<br>Dept:    8A, 350 1st St., Los Angeles |

        Robert P. Mosier, duly appointed Permanent Receiver ("Receiver") for Secured Capital

Investments, LLC and its affiliates/subsidiaries (collectively "SCI"), respectfully submits this

Final Account and Report ("FAR") regarding the operational and financial aspects of SCI.

The timeframe for this FAR is October 8, 2015 (date of appointment) through September 7,

2017 with exceptions noted where applicable.

        **Limitation:**    The case is roughly two years old.    As such, most of the data has been

reviewed and analyzed; all assets with meaningful value have been administered.    All

attempts are made to be as accurate as possible.    While unlikely, the possibility still exists

that newly discovered data could conceivably change the conclusions of the report.

**Organization:**   This FAR is organized as follows: (A) Summary of Assets Sold and Abandoned, (B) Accounting Update/Distribution Proposal and (C) Fees & Costs Summary.

### A.   SUMMARY OF ASSETS SOLD AND ABANDONED

1.   Sale of the Primary Properties:   The upper portion of Exhibit "A" (lines 1-9) is a summary of real properties sold pursuant to court order during the administration of the case.   In total, eight properties were sold for a gross recovery of $4,068,250.   The largest of these was the Stor-All Storage facility in Tucson for $1,200,000 and the smallest was a single-family residence in Owensboro, Kentucky for $1,100.   After paying mortgages, delinquent property taxes, and costs of sale, these eight sales netted the estate $2,132,970.

2.   Sale of Other Assets:   The lower half of Exhibit "A" (lines 10 – 13) is a summary of other assets that were administered by the Receivership Estate.   These other asset sales generated $50,200.   One additional asset remains unsold (line 14); the REIT for $8,000 that is presented in the motion to approve this FAR for Court approval.

3.   Combined Property and Asset Sales:   Combined, the sale of real properties and assets generated a net total (excluding the sale of the REIT that has yet to occur) of $2,183,170.

4.   Observation:   The recovery from the properties is minimal in the Receiver's experience due to at least three factors: (a) poor quality of the underlying properties/investments in most cases, (b) loans, and (c) geographic diversity – the properties were located from coast to coast making it a challenge to effectively manage.

5.   Properties and Assets Abandoned:   Exhibit "B" is a summary of assets for which there was no market or demand.   Each asset was investigated and the comments regarding the lack of liquidity are presented in the right column.   Many of these are loans

made to individuals who were void of traditional credit credentials.   Others are just bad investments.   In total, seventeen investments fit into this category.

**B.   ACCOUNTING UPDATE/DISTRIBUTION PROPOSAL**

6.    Receipts:   Exhibit "C" presents a cash basis accounting for the duration of the case. The upper portion (line 1 – 15) recaps revenues generated from (a) turnover of funds from the initial receiver ($189,450), (b) the sale of real properties ($4,068,250) and (c) sale of personal property ($50,200) and (d) cash generated by operating assets ($370,368). These assets/investments generated a total of $4,678,268 for the Receivership Estate.

7.    Expenses:   Exhibit "C," lines 16 through 48 shows expenditures from the estate.   These include (a) costs related to the sale of the properties including mortgage payoffs ($1,935,280), (b) costs to operate (and in certain instances close down) properties and store books/records ($256,579), and (c) professional fees paid through March 2016 net of 20% hold back ($376,789) for the permanent all professionals except the initial receiver. Total expenditures are $2,568,647; today's cash balance is $2,109,621 (line 49).

8.    Unauthorized Withdrawals from Receivership Bank Accounts:   A total of $43,766.05 that was improperly withdrawn from Receivership bank accounts for three rent producing projects (two apartment buildings in Florida and a storage facility in Mississippi) was subsequently recovered, with no impact on recovery for investors/victims. The Receiver detected the unauthorized withdrawals by a former property manager and individuals who worked with the manager and then worked with the bank and others to recover funds.

9.    Cash Pro Forma – Projected Net Available Distribution:   Exhibit "D" are approximations of (a) the remaining amounts to be paid and (b) the net available for distribution to investors.   Professional fees plus the holdbacks total $437,246 plus there are $22,400 of priority wages.   This leaves cash of $1,649,974; based on Investor claims of

$13,989,345, the expected return is 11.80% or 11.85% if the REIT is sold.   This is subject to change with Court approval.    Exhibit "E" is an approximation of the net possible payment to each investor (also subject to change).

## C.  FEES AND COSTS SUMMARY

10.    Receiver's Fees:   Exhibit "F" is a summary of fees and costs for the Receiver and his staff for the duration of the Receivership estate.    This includes prospective time to finish this FAR, respond to objections/comments, and make the final distribution. The Receiver's total fees and costs for the duration of the case (right at two years) are $96,111.80.   The final fees represent 2.4% of total anticipated disbursements in the case which is favorable comparted to the Congressionally allowed fees for a Bankruptcy Trustee which could have been roughly 3.2% or $130,176.

11.    Field Agent:   The Receiver's field agent Jim LeSieur, a retired bank president, served as an on-site manager as well as analyzing the defunct asset/loan portfolio.   The fees for the field agent were $16,345.00; the hourly rate here is $175.

12.    Bookkeeping Staff and Paralegal/Administration:   The bookkeeping staff is responsible for banking activity including making all deposits, issuing checks including the final checks, and reconciling accounts.   Nancy Michenaud is the chief bookkeeper, Aurora Bloom assists and Kristina Godinez is the principal paralegal and person overseeing administration.   During the tenure of the case, two other individuals filled this role in earlier periods.   The total fees and costs in this category are $59,885.19 at a blended hourly rate of $71.40.

13.    Administrative Costs:   The administrative costs are presented on the last page of Exhibit E.   These show the category of expenditures including postage, delivery and facsimile/Xerox.   The total costs are $13,608.50 of which $9,500 is storage and the

eventual destruction of the books and records including medical records related to the mental hospital located near Kansas City.   These have to be stored for a statutory period. The unpaid balance of the administrative expenses is $11,243.32.

/ / / /

14.   <u>Total Fees and Costs for the Receiver and His Staff</u>:   The total for the Receiver and his staff plus costs is $407,220.49.   Of this total, $273,225.71 remains unpaid including holdbacks.   The blended hourly rate for the Receiver and his staff is $173.

15.   <u>Budgeting, Accounting and Preliminary Analysis</u>:   Craig Collins, CPA and Ryan Baker, Senior Financial Analyst, make up this category.   Their efforts provided a preliminary scan of the receipts and disbursements for the case in addition to preparing the financial documents for the Receivership Estate including forecasts.   HSNO Forensic Accountants was selected for the reconstruction of the Defendants' accounts due to their cost effective expertise in this area.   The combined fees for Messer's Collins and Baker for the two-year period are $221,277.00 including projected fees to close.

16.   <u>Counsel's Fees</u>:   Diamond McCarthy's fees and costs for the duration of the case are $193,793.   Of this, $91,941 has been paid leaving a balance of $101,852 in unpaid fees and costs.

17.   <u>Tax Preparation</u>:   LoBuglio & Sigman prepared the tax returns for 3 years. The fees and costs to prepare these tax returns were $47,054 all of which remains unpaid.

18.   <u>Forensic Accounting</u>:   As mentioned, HSNO was brought in to prepare a reconciliation of pre-Receiver receipts and disbursements for SCI.   The fees and costs for HSNO were $44,706 of which $30,117 has been paid leaving an unpaid balance of $14,589.

19.   <u>Final Fee Application</u>:   A separate fee application and motion to approve final fees has been prepared and will be filed contemporaneously with the Motion to approve this

FAR.    Therefore, the above fees and costs remain subject to Court approval.

20.    <u>Totals</u>:    The total fees and costs for the professionals in this case were $814,999 of which $377,753 has been paid and the balance owing is $437,246 (Exhibit "G").

/ / / /

/ / / /

21.    <u>Conclusion</u>:    The fees and costs in this case are high relative to the gross value of the receipts.    This reflects the geographic challenge, the poor quality of the assets, mortgages and seventeen abandoned assets.    The percentage recovery at 11.9% is at the higher end of the expected range and consistent with the forecast of the Receiver early on in the case.

Date:    September 22, 2017

_____
Robert P. Mosier, Receiver

## DECLARATION OF ROBERT P. MOSIER

I, Robert P. Mosier, declare and affirm as follows:    I am the duly appointed Receiver in this matter and have first-hand knowledge about the following facts except where otherwise noted.    If called upon to testify, I could do so competently.

I have personally prepared this Final Account and Report.    The description of the activities for the duration of the case and the Receivership assets is accurate to the best of my knowledge and belief at this time.

Exhibit "A," prepared by Craig Collins, a CPA who is assisting the Receiver in the case, is a list of real estate assets that were sold at auction in March 2016.    Exhibit "B" was prepared by field agent Jim LeSieur and lists the assets that were abandoned.    Exhibit "C" was prepared by Mr. Collins (with input from the bookkeeping staff) and is a reconciliation of cash receipts and disbursements from October 8, 2015 through August 20, 2017.    Exhibit "D" also prepared by Mr. Collins is the cash flow projection expected after August 20, 2017 and reveals the likely distribution to the Investors/victims.    Exhibit "E" is a projection of the final distribution to individual investors/victims (subject to change).    Exhibit "F" is a summary of all fees and costs for the Receiver and the Receiver's staff for the duration of the case.    The last page of Exhibit "G" is a summary of the professionals' fees and costs the majority of which remain subject to Court approval.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.    This declaration is executed on the 22nd day of September 2017 in Costa Mesa, CA.

_____
Robert P. Mosier, Receiver

## SUMMARY OF EXHIBITS

Exhibit A:        Proceeds from Sale of Real Properties

Exhibit B:        Summary of Assets and Properties Abandoned

Exhibit C:        Cash Receipts and Disbursements (10-8-15 through 8-20-17)

Exhibit D:        Projected Final Distributions and Amounts Available for Victims

Exhibit E:        Projected Final Distribution by Investor

Exhibit F:        Summary of Total Fees for the Receiver/Receiver's Staff

Exhibit G:        Summary of Professional Fees

# EXHIBIT "A"

# SECURED CAPITAL INVESTMENTS, LLC
## PROCEEDS from SALES of REAL and PERSONAL PROPERTY

| | REAL PROPERTY LOCATION | GROSS SALES PRICE | PAY-OFF MORTGAGE | REAL PROPERTY TAXES | OTHER TAXES | DISBURSEMENTS PAID through ESCROW | | | | | TOTAL PAID-THRU ESCROW | NET SALES PROCEEDS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | SALE COMMIS-SIONS | INTEREST | TRANZON SALE EXPENSES | PRO-RATED RENTS | ALL OTHER EXPENSES | | |
| 1 | STOR-ALL STORAGE | TUCSON, ARIZONA | $1,200,000 | $502,210 | $130,924 | $0 | $48,000 | $29,219 | $10,736 | $13,897 | $1,095 | $736,081 | $463,919 |
| 2 | 38th STREET APTS | JACKSONVILLE, FLORIDA | 1,107,700 | 500,000 | 36,272 | 0 | 83,103 | 32,118 | 16,622 | 2,046 | 2,708 | 672,869 | 434,831 |
| 3 | JUSTINA APTS | JACKSONVILLE, FLORIDA | 880,000 | 250,000 | 20,741 | 0 | 48,000 | 16,060 | 13,205 | 1,283 | 2,708 | 351,997 | 528,003 |
| 4 | HI-SECURITY STORAGE | RICHLAND, MISSISSIPPI | 781,000 | 0 | 51,720 | 0 | 56,800 | 0 | 11,720 | 3,124 | 250 | 123,614 | 657,386 |
| 5 | MEDICAL FACILITY | EXCELSIOR SPRINGS, MISSOURI | 55,000 | 0 | 26,591 | 10,341 | 5,000 | 0 | 1,000 | 0 | 0 | 42,932 | 12,068 |
| 6 | SINGLE-FAMILY RES. | PADUCAH, KENTUCKY | 24,200 | 0 | 651 | 0 | 2,200 | 0 | 363 | 0 | 0 | 3,214 | 20,986 |
| 7 | APARTMENTS | EXCELSIOR SPRINGS, MISSOURI | 19,250 | 0 | 2,606 | 0 | 1,400 | 0 | 380 | 0 | 0 | 4,386 | 14,864 |
| 8 | SINGLE-FAMILY RES. | OWENSBORO, KENTUCKY | 1,100 | 0 | 87 | 0 | 100 | 0 | 0 | 0 | 0 | 187 | 913 |
| 9 | TOTAL REAL PROPERTY SALES | | $4,068,250 | $1,252,210 | $269,592 | $10,341 | $244,603 | $77,397 | $54,026 | $20,350 | $6,761 | $1,935,280 | $2,132,970 |

### PERSONAL PROPERTY

| | | NET SALES PROCEEDS |
|---|---|---|
| 10 | TAX LIENS | $39,750 |
| 11 | A VAN + OTHER WORLD GARDEN CAFÉ PERSONAL PROPERTY | 9,450 |
| 12 | FORFEITED REAL ESTATE DEPOSIT | 1,000 |
| 13 | TOTAL PERSONAL PROPERTY SALES | $50,200 |

TOTAL NET SALE PROCEEDS from SALE of REAL and PERSONAL PROPERTY | $2,183,170

| | | NET SALES PROCEEDS |
|---|---|---|
| 14 | EST'D PROCEEDS from FUTURE SALE of LANDWIN REIT | $8,000 |

ESTIMATED PROCEEDS from FUTURE PERSONAL PROPERTY SALE

8/2/2017 15:32

K:\1700FLDR\1716 SEC v. SCI\[CASH FLOW from the BEGINNING.xlsx]PROPERTY SALES

# EXHIBIT "B"

# THE RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
## LIST of ABANDONED INVESTMENTS and LOANS

| | BORROWER or INVESTMENT ENTITY | DESCRIPTION of the INVESTMENT | INTEREST RATE | DATE of INVESTMENT | AMOUNT INVESTED | REASON for ABANDONMENT of ASSET |
|---|---|---|---|---|---|---|
| 1 | THE JARA GROUP | 250 SHARES of the BUSINESS | N/A | 2/7/2008 | $100,000 | THE BUSINESS IS NO LONGER OPEN |
| 2 | DHL SHIPPING FRANCHISE | 30% of the BUSINESS | N/A | 4/10/2008 | $85,000 | THE BUSINESS SHUT DOWN AROUND 2010 |
| 3 | TELOS BREAKTHROUGH PRINCIPLES | LOAN | 10.00% | 9/14/2007 | $50,000 | THE BUSINESS WENT BANKRUPT IN 2009/2010, BOTH LOANS WERE "SECURED" BY MANAGER'S HOME BUT PAUL MATA NEVER RECORDED A LIEN ON THE PROPERTY |
| 4 | TELOS BREAKTHROUGH PRINCIPLES | LOAN | 10.00% | 9/27/2007 | $20,000 | |
| 5 | CHINO'S ROCK and TACO | PURCHASE of FRANCHISE RIGHTS | N/A | 1/13/2010 | $33,000 | THE CHINO'S ROCK and TACO FRANCHISOR CLOSED ALL FOUR OF ITS FRANCHISES THEREBY MAKING THE COMPANY'S INVESTMENT VALUELESS. |
| 6 | ANTHONY COLE | LOAN | 12.00% | 10/16/2008 | $85,000 | THE ARE NO SIGNED COPIES OF ANY OF THE THREE NOTES WHICH MAKES COLLECTION ALMOST IMPOSSIBLE, BORROWER'S TELEPHONE IS NO LONGER IN SERVICE |
| 7 | ANTHONY COLE | LOAN | 12.00% | 10/16/2008 | $50,000 | |
| 8 | ANTHONY COLE | LOAN | 12.00% | 12/4/2008 | $35,000 | |
| 9 | ETHOS DIGITAL (ANTHONY COLE) | PURCHASE of 30% of the COMPANY | N/A | 1/25/2008 | $100,000 | FRANCHISE TAX BOARD SUSPENDED BUSINESS MANY YEARS AGO, TELEPHONE NUMBER NO LONGER IN SERVICE |
| 10 | SERGIO RODRIQUEZ | LOAN | 12.00% | 3/10/2010 | $31,400 | UNABLE to CONTACT, OUT-OF-STATE LOCATION AND CROSS BORDER COLLECTION COLLECTION ATTEMPTS LIKELY TO BE VERY COSTLY |
| 11 | AMD ELECTRIC | LOAN | 10.00% | 3/18/2008 | $30,000 | BUSINESS WAS CLOSED IN 2010 |
| 12 | RUBEN MIRANDA | LOAN | 15.00% | 6/26/2008 | $25,000 | BORROWER'S BUSINESS, KOOL FILTRATION, STILL EXISTS.  BORROWER DOES NOT RETURN TELEPHONE CALLS. |
| 13 | THE HOURGLASS ART & WINE GALLERY | LOAN | 10.00% | 8/29/2013 | $25,000 | BUSINESS WAS CLOSED IN 2014. |
| 14 | THE MODERN at WHITE ROCK LAKE | LOAN | 12%-18% | 5/25/2012 | $15,585 | OUT-OF-STATE LOCATION AND CROSS BORDER COLLECTION COLLECTION ATTEMPTS LIKELY TO BE VERY COSTLY ON THIS LOW VALUE LOAN |
| 15 | MARVIN SANTAMARIA | LOAN | 10.00% | 5/27/2010 | $10,000 | FORMER EMPLOYEE WHO WAS GIVEN LOAN by PAUL MATA, UNABLE TO CONTACT. |
| 16 | AGAPAY PRODUCTS INCORPORATED | LOAN | 30.00% | 12/2/2010 | $5,000 | UNABLE to CONTACT, SMALL LOAN MAKES COLLECTION RECOVERY MINIMAL |
| 17 | IDENTITY DESIGN / U-CHALLENGE | UNKNOWN | UNKNOWN | UNKNOWN | UNKNOWN | IDENTITYDESIGN WENT UNDER and RENAISSANCE WAS GIVEN AN INTEREST IN U-CHALLENGE, UNABLE TO CONTACT COMPANY PRINCIPAL. |
| | TOTAL KNOWN AMOUNT of ABANDONED INVESTMENTS and LOANS | | | | $699,985 | |

8/2/2017 12:07

K:\1700FLDR\1716 SEC v. SCI\ABANDONED PROPERTY LIST.xlsx\DEC

# EXHIBIT "C"

# THE RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS, LLC
## CASH RECEIPTS & DISBURSEMENTS from
## OCTOBER 8, 2015 through AUGUST 20, 2017

| # | Description | | | |
|---|---|--:|--:|--:|
| 1 | TURN-OVER of FUNDS from the ORIGINAL RECEIVER | | | $189,450 |
| 2 | TOTAL GROSS SALES PRICE of ALL REAL ESTATE SOLD | | | 4,068,250 |
| 3 | NET SALES PROCEEDS from SALE of PERSONAL PROPERTY: | | | |
| 4 | NET TAX LIEN SALE PROCEEDS | | $39,750 | |
| 5 | SALE of a VAN and OTHER PERSONAL PROPERTY | | 9,450 | |
| 6 | FORFEITED REAL ESTATE SALE DEPOSIT | | 1,000 | |
| 7 | TOTAL NET SALES PROCEEDS from SALE of PERSONAL PROPERTY | | | 50,200 |
| 8 | OPERATING CASH RECEIPTS: STORAGE REVENUES | | 208,778 | |
| 9 | RENTAL REVENUES | | 71,347 | |
| 10 | TAX LIEN PAYOFFS | | 37,890 | |
| 11 | LANDWIN DISTRIBUTION | | 32,786 | |
| 12 | INTEREST INCOME & DIVIDENDS | | 2,572 | |
| 13 | OTHER CASH RECEIPTS | | 16,995 | |
| 14 | TOTAL OPERATING CASH RECEIPTS | | | 370,368 |
| 15 | TOTAL CASH RECEIPTS | | | 4,678,268 |
| 16 | PROPERTY-RELATED DISBURSEMENTS: | | | |
| 17 | ITEMS PAID thru ESCROW: PAYOFF MORTGAGES | | 1,252,210 | |
| 18 | PROPERTY TAXES | | 269,593 | |
| 19 | OTHER TAXES | | 10,341 | |
| 20 | SALES COMMISSIONS | | 244,603 | |
| 21 | ACCRUED INTEREST | | 77,396 | |
| 22 | TRANZON EXPENSES | | 54,026 | |
| 23 | PRORATED RENTS | | 20,350 | |
| 24 | OTHER ITEMS | | 6,761 | |
| 25 | TOTAL of ITEMS PAID thru ESCROW | | 1,935,280 | |
| 26 | PROPERTY COSTS: UTILITIES | $70,812 | | |
| 27 | INSURANCE | 51,932 | | |
| 28 | PAYROLL & PAYROLL TAXES | 48,875 | | |
| 29 | MISSOURI PATIENT REFUNDS | 23,236 | | |
| 30 | REPAIRS & MAINTENANCE | 20,396 | | |
| 31 | MOVING & STORAGE | 8,563 | | |
| 32 | TELEPHONE & INTERNET | 4,999 | | |
| 33 | ALL OTHER CASH DISBURSEMENTS | 27,765 | | |
| 34 | TOTAL OPERATING CASH DISBURSEMENTS | | 256,579 | |
| 35 | TOTAL PROPERTY-RELATED DISBURSEMENTS | | | 2,191,859 |
| 36 | PROFESSIONAL FEES & COSTS: | | | |
| 37 | ROBERT P. MOSIER, PERMANENT RECEIVER | | 37,281 | |
| 38 | FORENSIC ACCOUNTANTS | | 63,936 | |
| 39 | RECEIVER'S AGENTS | | 30,413 | |
| 40 | ADMINISTRATIVE COSTS | | 3,823 | |
| 41 | TOTAL MOSIER & COMPANY, INC. | | 135,453 | |
| 42 | THOMPSON COBURN LLP, TEMPORARY RECEIVER | 119,278 | | |
| 43 | DIAMOND McCARTHY LLP | 91,941 | | |
| 44 | HAGEN STREIFF, FORENSIC ACCOUNTANTS | 30,117 | | |
| 45 | LoBUGLIO & SIGMAN, CPAs | 0 | | |
| 46 | TOTAL OTHER PROFESSIONALS | | 241,336 | |
| 47 | TOTAL PROFESSIONAL FEES & COSTS | | | 376,789 |
| 48 | TOTAL DISBURSEMENTS | | | 2,568,647 |
| 49 | TOTAL CASH CURRENTLY on HAND | | | $2,109,621 |

EXHIBIT "D"

# THE RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS, LLC

## PROJECTED CASH RECEIPTS & DISBURSEMENTS

### from AUGUST 20, 2017 through END of the CASE

| | | TOTAL | 1st APP | | |
|---|---|---|---|---|---|
| 1 | CASH CURRENTLY on HAND | | | | $2,109,621 |
| 2 | ESTIMATED FUTURE CASH DISBURSEMENTS to PRIORITY CLAIMANTS: | | | | |
| 3 | CLASS ONE CLAIMANTS | TOTAL | 1st APP | | |
| 4 | PROFESSIONAL FEES & COSTS: | 2nd APP | HOLDBACK | | |
| 5 | DIAMOND McCARTHY LLP | $81,243 | $20,608 | $101,852 | |
| 6 | THE RECEIVER | 99,135 | 17,275 | 116,410 | |
| 7 | MOSIER & COMPANY, INC. | 141,358 | 15,984 | 157,342 | |
| 8 | LoBUGLIO & SIGMAN | 47,054 | 0 | 47,054 | |
| 9 | HSNO | 7,060 | 7,529 | 14,589 | |
| 10 | TOTAL PROFESSIONAL FEES | $375,850 | $61,396 | 437,246 | |
| 11 | CLASS TWO CLAIMANTS - OTHER ADMINISTRATIVE CLAIMS | | 22,400 | | |
| 12 | TOTAL | | | | 459,647 |
| 13 | TOTAL CASH AVAILABLE for DISTRIBUTION to CLASS 4 CLAIMANTS | | | (A) | $1,649,974 |
| 14 | TOTAL APPROVED CLASS FOUR CLAIMS  (INVESTORS) | | | (B) | $13,989,345 |
| 15 | PERCENT of APPROVED CLASS FOUR CLAIMS | | | | 11.795% |
| 16 | TOTAL CASH AVAILABLE for DISTRIBUTION to CLASS 4 CLAIMANTS | | | (A) | $1,649,974 |
| 17 | ADD EXPECTED PROCEEDS from SALE of LANDWIN INTEREST | | | | 8,000 |
| 18 | ESTIMATED CASH AVAILABLE for DISTRIBUTION after LANDWIN SALE | | | | $1,657,974 |
| 19 | TOTAL APPROVED CLASS FOUR CLAIMS  (INVESTORS) | | | (B) | $13,989,345 |
| 20 | PERCENT of APPROVED CLASS FOUR CLAIMS | | | | 11.852% |

K:\1700FLDR\1716 SEC v. SCI\[CASH FLOW from the BEGINNING.xlsx]CASH REPORT          9/22/2017 12:17

EXHIBIT "E"

## RECEIVERSHIP ESTATE of
## SECURED CAPITAL INVESTMENTS
## LIST of CLAIMS & PROPOSED DISTRIBUTIONS

### SUMMARY of PAYMENTS to be MADE to CLASSES of ALLOWED CLAIMS:

TOTAL CASH AVAILABLE for ALL ALLOWED CLAIMS $2,109,621.00

| PROPOSED DISTRIBUTIONS by CLASS of CLAIM: | Amount of Claims | Amount to be Paid | % of Claims |
|---|---|---|---|
| CLASS 1 (ADMINISTRATIVE PROFESSIONAL FEES) | $437,245.79 | $437,245.79 | 100.000% |
| CLASS 2 (OTHER ADMINISTRATIVE CLAIMS) | 22,400.41 | 22,400.41 | 100.000% |
| CLASS 3 (TAX CLAIMS) | 61,336.41 | 0.00 | 0.000% |
| CLASS 4 (INVESTOR CLAIMS) | 13,989,345.05 | 1,649,974.80 | 11.795% |
| CLASS 5 (NONINVESTOR CLAIMS) | 21,869.10 | 0.00 | 0.000% |
| TOTAL PROPOSED DISTRIBUTIONS | $14,532,196.76 | $2,109,621.00 | |

### CLASS 1:  ADMINISTRATIVE PROFESSIONAL FEES

| | a. Previous Fee Award and Holdbacks | Fees Paid | Expenses Paid | Holdback | Proposed Distribution Amount |
|---|---|---|---|---|---|
| 1 | a. Previous Fee Award and Holdbacks | | | | |
| 2 | Receiver | $67,693.60 | $1,434.99 | $17,275.00 | $17,275.00 |
| 3 | Mosier & Company, Inc. | 63,936.00 | 0.00 | 15,983.50 | 15,983.50 |
| 4 | Diamond McCarthy LLP | 82,434.00 | 9,507.10 | 20,608.40 | 20,608.40 |
| 5 | HSNO | 30,117.00 | 0.00 | 7,529.00 | 7,529.00 |
| 6 | Total Previous Fee Awards & Holdbacks | $244,180.60 | $10,942.09 | $61,395.90 | |

| | b. Current Fee Request | Fees Incurred | Expenses Incurred | Total Requested | |
|---|---|---|---|---|---|
| 7 | | | | | |
| 8 | b. Current Fee Request | | | | |
| 9 | Receiver | $87,145.30 | $11,989.74 | $99,135.04 | 99,135.04 |
| 10 | Mosier & Company, Inc. | 141,357.50 | 0.00 | 141,357.50 | 141,357.50 |
| 11 | Diamond McCarthy LLP | 76,304.80 | 4,938.55 | 81,243.35 | 81,243.35 |
| 12 | HSNO | 7,060.00 | 0.00 | 7,060.00 | 7,060.00 |
| 13 | LoBuglio & Sigman | 46,654.00 | 400.00 | 47,054.00 | 47,054.00 |
| 14 | Total Current Fee Request | $358,521.60 | $17,328.29 | $375,849.89 | |

| 15 | c. Total Holdbacks plus Current Fee Request | | | | $437,245.79 |

### CLASS 2:  OTHER ADMINISTRATIVE CLAIMS

| | Claim # | Employee | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|---|
| | | Missouri RCF Payroll | $16,500.00 | $16,500.00 |
| 1 | 214 | Nagham Dahi | 1,080.00 | 1,080.00 |
| 2 | 217 | Jacinto Rodriguez | 1,861.96 | 1,861.96 |
| 3 | 217 | Jacinto Rodriguez | 1,124.63 | 1,124.63 |
| 4 | 218 | Jarrod Zozaya | 905.28 | 905.28 |
| 5 | 218 | Jarrod Zozaya | 768.54 | 768.54 |
| 6 | 218 | Jarrod Zozaya | 70.00 | 70.00 |
| 7 | 219 | Mary Young | 90.00 | 90.00 |
| | | TOTAL WAGE CLAIMS | $22,400.41 | $22,400.41 |

Exhibit 1, Page 043

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## CLASS 3:  TAX CLAIMS

| | Taxing Authority | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|
| 1 | IRS | $2,162.17 | $0.00 |
| 2 | EDD | 5,605.91 | 0.00 |
| | FRANCHISE TAX BOARD RE: | | |
| 3 | SECURED CAPITAL INVESTMENTS, LLC | 1,290.31 | 0.00 |
| 4 | RENAISSANCE MANAGEMENT, LLC | 17,566.33 | 0.00 |
| 5 | DESTINY WITH A PURPOSE, LLC | 8,337.74 | 0.00 |
| 6 | CHEF RAVI RECIPES, LLC | 7,436.10 | 0.00 |
| 7 | LOGOS REAL ESTATE HOLDINGS, LLC | 3,802.87 | 0.00 |
| 8 | WORLD GARDENS CAFÉ, LLC | 3,728.87 | 0.00 |
| 9 | LOGOS MANAGEMENT GROUP, LLC | 2,658.87 | 0.00 |
| 10 | LOGOS INSURANCE GROUP, LLC | 2,298.86 | 0.00 |
| 11 | INDESTRUCTIBLE PEAK MANAGEMENT, INC. | 2,228.86 | 0.00 |
| 12 | 9327 FAIRWAY VIEW PLACE, LLC | 2,170.66 | 0.00 |
| 13 | LOGOS WEALTH ADVISORS, INC. | 2,048.86 | 0.00 |
| | TOTAL TAX CLAIMS | $61,336.41 | $0.00 |

## CLASS 4:  INVESTOR CLAIMS

| | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 1 | 1 | Akerboom | $202,000.00 | 1.444% | $23,824.91 | 11.795% |
| 2 | 2 | Alexander | 194,000.00 | 1.387% | 22,881.35 | 11.795% |
| 3 | 3 | Alfred | 209,681.26 | 1.499% | 24,730.88 | 11.795% |
| 4 | 4 | Allbritten (Galop) | 129,766.81 | 0.928% | 15,305.36 | 11.795% |
| 5 | 5 | Alvarez | 40,000.00 | 0.286% | 4,717.80 | 11.795% |
| 6 | 7 | Annunziato | 10,000.00 | 0.071% | 1,179.45 | 11.795% |
| 7 | 9 | Babb | 100,000.00 | 0.715% | 11,794.51 | 11.795% |
| 8 | 10 | Bartoo-Hernandez | 31,710.55 | 0.227% | 3,740.10 | 11.795% |
| 9 | 11 | Belk | 75,000.00 | 0.536% | 8,845.88 | 11.795% |
| 10 | 12 | Bennett | 259,062.00 | 1.852% | 30,555.10 | 11.795% |
| 11 | 13 | Burger | 24,311.86 | 0.174% | 2,867.46 | 11.795% |
| 12 | 14 | Burgoon | 353,000.00 | 2.523% | 41,634.62 | 11.795% |
| 13 | 16 | Carlsen | 49,000.00 | 0.350% | 5,779.31 | 11.795% |
| 14 | 17 | Carlson | 300,000.00 | 2.144% | 35,383.53 | 11.795% |
| 15 | 18 | Carroll | 6,583.18 | 0.047% | 776.45 | 11.795% |
| 16 | 19 | Carson | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 17 | 20 | Cavallaro | 128,854.16 | 0.921% | 15,197.72 | 11.795% |
| 18 | 21 | Cefalia | 1,500.00 | 0.011% | 176.92 | 11.795% |
| 19 | 22 | Cintra Do Prado, A | 255,860.00 | 1.829% | 30,177.44 | 11.795% |
| 20 | 23 | Cintra Do Prado, T | Disallowed by Court | | | |
| 21 | 24 | Claiborne | 398,000.00 | 2.845% | 46,942.15 | 11.795% |
| 22 | 25 | Cook | 188,000.00 | 1.344% | 22,173.68 | 11.795% |
| 23 | 26 | Davenport | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 24 | 27 | DeCarlo | 79,606.63 | 0.569% | 9,389.21 | 11.795% |
| 25 | 28 | Delgadillo | 479,334.67 | 3.426% | 56,535.18 | 11.795% |

**(Continued)**

Exhibit 1, Page 044

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## CLASS 4:  INVESTOR CLAIMS  (CONTINUED)

|   | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 26 | 30 | Dienes | 102,000.00 | 0.729% | 12,030.40 | 11.795% |
| 27 | 31 | Dominick | 408,675.00 | 2.921% | 48,201.22 | 11.795% |
| 28 | 32 | Duffield | 200,000.00 | 1.430% | 23,589.02 | 11.795% |
| 29 | 33 | Esparza | 75,656.00 | 0.541% | 8,923.26 | 11.795% |
| 30 | 34 | Faubion | 400.00 | 0.003% | 47.18 | 11.795% |
| 31 | 35 | Fortin | 98,533.59 | 0.704% | 11,621.55 | 11.795% |
| 32 | 36 | Franchi | 105,815.52 | 0.756% | 12,480.42 | 11.795% |
| 33 | 38 | Gavigan | 200,000.00 | 1.430% | 23,589.02 | 11.795% |
| 34 | 39 | Gulizia | 590,314.98 | 4.220% | 69,624.76 | 11.795% |
| 35 | 40 | Gulizia-Knight | 49,123.23 | 0.351% | 5,793.84 | 11.795% |
| 36 | 42 | Hensley | 118,380.00 | 0.846% | 13,962.34 | 11.795% |
| 37 | 43 | Hernandez | 215,761.84 | 1.542% | 25,448.05 | 11.795% |
| 38 | 43A | Hernandez | 337,000.00 | 2.409% | 39,747.50 | 11.795% |
| 39 | 44 | Huang | 37,078.57 | 0.265% | 4,373.24 | 11.795% |
| 40 | 45 | Jacobs | 580,000.00 | 4.146% | 68,408.16 | 11.795% |
| 41 | 46 | Jacobs | 208,603.63 | 1.491% | 24,603.78 | 11.795% |
| 42 | 47 | Kemp | 7,634.00 | 0.055% | 900.39 | 11.795% |
| 43 | 47A | Kemp | 20,000.00 | 0.143% | 2,358.90 | 11.795% |
| 44 | 48 | Kirby | 80,000.00 | 0.572% | 9,435.61 | 11.795% |
| 45 | 49 | Klein | 393,532.16 | 2.813% | 46,415.19 | 11.795% |
| 46 | 50 | Krackow | 172,452.53 | 1.233% | 20,339.93 | 11.795% |
| 47 | 51 | Kunkle | 85,000.00 | 0.608% | 10,025.33 | 11.795% |
| 48 | 52 | Langley | 59,700.00 | 0.427% | 7,041.32 | 11.795% |
| 49 | 53 | Lee | 315,769.99 | 2.257% | 37,243.53 | 11.795% |
| 50 | 54 | Line | 234,265.22 | 1.675% | 27,630.44 | 11.795% |
| 51 | 56 | Macek | 60,000.00 | 0.429% | 7,076.71 | 11.795% |
| 52 | 57 | Marhefka | 58,500.00 | 0.418% | 6,899.79 | 11.795% |
| 53 | 58 | Mata | 62,000.00 | 0.443% | 7,312.60 | 11.795% |
| 54 | 59 | McBurney | 144,992.86 | 1.036% | 17,101.20 | 11.795% |
| 55 | 61 | Meyer | 141,712.13 | 1.013% | 16,714.25 | 11.795% |
| 56 | 62 | Munoz | 225,000.00 | 1.608% | 26,537.65 | 11.795% |
| 57 | 63 | Nadler | 124,386.07 | 0.889% | 14,670.73 | 11.795% |
| 58 | 64 | Nicholson | 101,909.50 | 0.728% | 12,019.73 | 11.795% |
| 59 | 65 | Nunez | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 60 | 66 | Page | 12,928.52 | 0.092% | 1,524.86 | 11.795% |
| 61 | 67 | Polite | 98,383.29 | 0.703% | 11,603.83 | 11.795% |
| 62 | 68 | Quiroz | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 63 | 69 | Richards | 111,035.80 | 0.794% | 13,096.13 | 11.795% |
| 64 | 70 | Saracho | 44,637.08 | 0.319% | 5,264.73 | 11.795% |
| 65 | 70A | Barker-Signor | 13,963.76 | 0.100% | 1,646.96 | 11.795% |
| 66 | 70B | Saracho | 215,339.96 | 1.539% | 25,398.29 | 11.795% |
| 67 | 71 | Searfoss | 25,000.00 | 0.179% | 2,948.63 | 11.795% |
| 68 | 72 | Shenton | 3,960.00 | 0.028% | 467.06 | 11.795% |
| 69 | 73 | Sherman | 242,500.00 | 1.733% | 28,601.69 | 11.795% |
| 70 | 75 | Starr | 75,000.00 | 0.536% | 8,845.88 | 11.795% |
| 71 | 76 | Sweeney | 30,000.00 | 0.214% | 3,538.35 | 11.795% |
| 72 | 76A | Sweeney | 71,000.00 | 0.508% | 8,374.10 | 11.795% |
| 73 | 76B | Sweeney | 105,000.00 | 0.751% | 12,384.24 | 11.795% |

**(Continued)**

Exhibit 1, Page 045

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## CLASS 4: INVESTOR CLAIMS (CONTINUED)

| | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 74 | 77 | Tejas | 783,177.45 | 5.598% | 92,371.95 | 11.795% |
| 75 | 78 | Thompson | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 76 | 80 | Valadez | 550,000.00 | 3.932% | 64,869.81 | 11.795% |
| 77 | 82 | Vaughn | 240,000.00 | 1.716% | 28,306.83 | 11.795% |
| 78 | 83 | Wagner | 108,000.00 | 0.772% | 12,738.07 | 11.795% |
| 79 | 83A | Wandel | 300,000.00 | 2.144% | 35,383.53 | 11.795% |
| 80 | 85 | Ware | 136,000.00 | 0.972% | 16,040.53 | 11.795% |
| 81 | 87 | Wong | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 82 | 88 | Workman | 190,000.00 | 1.358% | 22,409.57 | 11.795% |
| 83 | 89 | Young | 300,000.00 | 2.144% | 35,383.53 | 11.795% |
| 84 | 90 | Zbinden | 229,110.00 | 1.638% | 27,022.40 | 11.795% |
| 85 | 91 | Zuniga | 30,000.00 | 0.214% | 3,538.35 | 11.795% |
| 86 | 93 | Carrillo | 46,861.38 | 0.335% | 5,527.07 | 11.795% |
| 87 | 94 | Delgadillo | 61,333.33 | 0.438% | 7,233.97 | 11.795% |
| 88 | 95 | Galop | 0.00 | 0.000% | 0.00 | 0.000% |
| 89 | 97 | Haver-Habib | 240,000.00 | 1.716% | 28,306.83 | 11.795% |
| 90 | 98 | Krausman | 50,500.00 | 0.361% | 5,956.23 | 11.795% |
| 91 | 100 | Adad | 92,000.00 | 0.658% | 10,850.95 | 11.795% |
| 92 | 101 | Chan | 72,778.04 | 0.520% | 8,583.81 | 11.795% |
| 93 | 102 | Clymer | 0.00 | 0.000% | 0.00 | 0.000% |
| 94 | 136 | Jackson-Gewirtz | 54,000.00 | 0.386% | 6,369.04 | 11.795% |
| 95 | N/N | Suber | 27,368.50 | 0.196% | 3,227.98 | 11.795% |
| | | **TOTAL ALLOWED INVESTOR CLAIMS** | **$13,989,345.05** | **100.000%** | **$1,649,974.80** | **11.795%** |

## CLASS 5: NON-INVESTOR CLAIMS

| | Claim # | Vender | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|---|
| 1 | 203 | Platte County Public Adminstrator (for RCF) | $4,840.72 | $0.00 |
| 2 | 205 | Billy Jack May | 570.00 | 0.00 |
| 3 | 206 | Access Done Easy LLC | 1,091.83 | 0.00 |
| 4 | 207 | EVCO Wholesale Food Corp. | 7,351.15 | 0.00 |
| 5 | 208 | Armine Pogosyan | 500.00 | 0.00 |
| 6 | 209 | Vend Lease Company, Inc. | 1,761.65 | 0.00 |
| 7 | 211 | Precision Air Conditioning & Mechanical | 250.38 | 0.00 |
| 8 | 212 | Gym Management Services | 600.00 | 0.00 |
| 9 | 213 | City of Excelsior Springs, Missouri | 1,370.73 | 0.00 |
| 10 | 215 | Kevin Fry | 818.90 | 0.00 |
| 11 | 216 | Sysco | 2,396.15 | 0.00 |
| 12 | | Ron Young | 317.59 | 0.00 |
| | | **TOTAL GENERAL UNSECURED CLAIMS** | **$21,869.10** | **$0.00** |

EXHIBIT "F"

# RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
## SUMMARY of the RECEIVER and HIS AGENTS' FEES & COSTS
### FOR THE PERIOD from OCTOBER 2015 through AUGUST 2017 TO CLOSE

| CUMULATIVE SUMMARY of ALL FEES and COSTS | HOURS | HOURLY RATE | TOTAL FEES | COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|
| RECEIVER ROBERT P. MOSIER | 290.10 | $330.23 | $95,799.60 | $312.20 | $96,111.80 | $37,280.56 | $58,831.24 |
| FIELD AGENTS | 93.40 | $175.00 | 16,345.00 | 0.00 | 16,345.00 | 11,130.00 | 5,215.00 |
| TOTAL PROFESSIONALS | 383.50 | $292.42 | 112,144.60 | 312.20 | 112,456.80 | 48,410.58 | 64,046.24 |
| BOOKKEEPING & PARALEGAL | 835.00 | $71.40 | 59,617.40 | 267.79 | 59,885.19 | 19,283.04 | 40,602.15 |
| TOTAL FEES | 1,218.50 | $140.96 | 171,762.00 | 579.99 | 172,341.99 | 67,693.60 | 104,648.39 |
| ADMINISTRATIVE COSTS | | | | | 13,608.50 | 2,365.18 | 11,243.32 |
| TOTAL FEES & COSTS | 1,218.50 | $140.96 | $171,762.00 | $14,188.49 | $185,950.49 | $70,058.78 | $115,891.71 |
| | | | | | 0.00 | (0.00) | (0.00) |

| RECEIVER: ROBERT P. MOSIER | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| OCTOBER | 2015 | 48.70 | $301.17 | $14,667.20 | $312.20 | $14,979.40 | $11,733.80 | $3,245.60 |
| NOVEMBER | 2015 | 28.80 | $318.92 | 9,184.80 | 0.00 | 9,184.80 | 7,347.88 | $1,836.92 |
| DECEMBER | 2015 | 22.20 | $356.00 | 7,903.20 | 0.00 | 7,903.20 | 6,322.60 | 1,580.60 |
| JANUARY | 2016 | 24.90 | $270.22 | 6,728.40 | 0.00 | 6,728.40 | 5,382.76 | 1,345.64 |
| FEBRUARY | 2016 | 12.10 | $356.00 | 4,307.60 | 0.00 | 4,307.60 | 3,446.12 | 861.48 |
| MARCH | 2016 | 10.70 | $356.00 | 3,809.20 | 0.00 | 3,809.20 | 3,047.40 | 761.80 |
| APRIL | 2016 | 16.70 | $302.71 | 5,055.20 | 0.00 | 5,055.20 | 0.00 | 5,055.20 |
| MAY | 2016 | 14.50 | $306.90 | 4,450.00 | 0.00 | 4,450.00 | 0.00 | 4,450.00 |
| JUNE | 2016 | 8.10 | $356.00 | 2,883.60 | 0.00 | 2,883.60 | 0.00 | 2,883.60 |
| JULY | 2016 | 3.50 | $356.00 | 1,246.00 | 0.00 | 1,246.00 | 0.00 | 1,246.00 |
| AUGUST | 2016 | 16.70 | $356.00 | 5,945.20 | 0.00 | 5,945.20 | 0.00 | 5,945.20 |
| SEPTEMBER | 2016 | 5.60 | $356.00 | 1,993.60 | 0.00 | 1,993.60 | 0.00 | 1,993.60 |
| OCTOBER | 2016 | 6.70 | $356.00 | 2,385.20 | 0.00 | 2,385.20 | 0.00 | 2,385.20 |
| NOVEMBER | 2016 | 6.50 | $356.00 | 2,314.00 | 0.00 | 2,314.00 | 0.00 | 2,314.00 |
| DECEMBER | 2016 | 13.20 | $356.00 | 4,699.20 | 0.00 | 4,699.20 | 0.00 | 4,699.20 |
| JANUARY | 2017 | 2.90 | $356.00 | 1,032.40 | 0.00 | 1,032.40 | 0.00 | 1,032.40 |
| FEBRUARY | 2017 | 5.80 | $356.00 | 2,064.80 | 0.00 | 2,064.80 | 0.00 | 2,064.80 |
| MARCH | 2017 | 9.30 | $356.00 | 3,310.80 | 0.00 | 3,310.80 | 0.00 | 3,310.80 |
| APRIL | 2017 | 2.30 | $356.00 | 818.80 | 0.00 | 818.80 | 0.00 | 818.80 |
| MAY | 2017 | 4.60 | $356.00 | 1,637.60 | 0.00 | 1,637.60 | 0.00 | 1,637.60 |
| JUNE | 2017 | 4.40 | $356.00 | 1,566.40 | 0.00 | 1,566.40 | 0.00 | 1,566.40 |
| JULY | 2017 | 3.80 | $356.00 | 1,352.80 | 0.00 | 1,352.80 | 0.00 | 1,352.80 |
| AUGUST 2017 TO CLOSE | | 18.10 | $356.00 | 6,443.60 | 0.00 | 6,443.60 | 0.00 | 6,443.60 |
| RECEIVER'S FEES | | 290.10 | $330.23 | $95,799.60 | $312.20 | $96,111.80 | $37,280.56 | $58,831.24 |

| FIELD AGENT: JIM LESIEUR | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| OCTOBER | 2015 | 3.50 | $175.00 | $612.50 | $0.00 | $612.50 | $490.00 | $122.50 |
| NOVEMBER | 2015 | 25.60 | $175.00 | 4,480.00 | 0.00 | 4,480.00 | 3,584.00 | 896.00 |
| DECEMBER | 2015 | 18.00 | $175.00 | 3,150.00 | 0.00 | 3,150.00 | 2,520.00 | 630.00 |
| JANUARY | 2016 | 16.60 | $175.00 | 2,905.00 | 0.00 | 2,905.00 | 2,324.00 | 581.00 |
| FEBRUARY | 2016 | 7.10 | $175.00 | 1,242.50 | 0.00 | 1,242.50 | 994.00 | 248.50 |
| MARCH | 2016 | 8.70 | $175.00 | 1,522.50 | 0.00 | 1,522.50 | 1,218.00 | 304.50 |
| APRIL | 2016 | 0.40 | $175.00 | 70.00 | 0.00 | 70.00 | 0.00 | 70.00 |
| MAY | 2016 | 0.60 | $175.00 | 105.00 | 0.00 | 105.00 | 0.00 | 105.00 |
| JUNE | 2016 | 1.40 | $175.00 | 245.00 | 0.00 | 245.00 | 0.00 | 245.00 |
| AUGUST | 2016 | 1.50 | $175.00 | 262.50 | 0.00 | 262.50 | 0.00 | 262.50 |
| SEPTEMBER | 2016 | 2.20 | $175.00 | 385.00 | 0.00 | 385.00 | 0.00 | 385.00 |
| OCTOBER | 2016 | 1.00 | $175.00 | 175.00 | 0.00 | 175.00 | 0.00 | 175.00 |
| DECEMBER | 2016 | 1.60 | $175.00 | 280.00 | 0.00 | 280.00 | 0.00 | 280.00 |
| FEBRUARY | 2017 | 0.50 | $175.00 | 87.50 | 0.00 | 87.50 | 0.00 | 87.50 |
| MARCH | 2017 | 0.70 | $175.00 | 122.50 | 0.00 | 122.50 | 0.00 | 122.50 |
| AUGUST 2017 TO CLOSE | | 4.00 | $175.00 | 700.00 | 0.00 | 700.00 | 0.00 | 700.00 |
| FIELD AGENT | | 93.40 | $175.00 | $16,345.00 | $0.00 | $16,345.00 | $11,130.00 | $5,215.00 |

# RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
## SUMMARY of the RECEIVER and HIS AGENTS' FEES & COSTS
## FOR THE PERIOD from OCTOBER 2015 through AUGUST 2017 TO CLOSE

**BOOKKEEPING & PARALEGAL:**

| | | HOURS | HOURLY RATE | TOTAL FEES | DIRECT COSTS | TOTAL FEES and COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|
| NANCY E. MICHENAUD (NOTE) | | | | | | | | |
| OCTOBER | 2015 | 36.30 | $95.00 | $3,448.50 | $5.18 | $3,453.68 | $2,758.80 | $694.88 |
| NOVEMBER | 2015 | 33.60 | $95.00 | 3,192.00 | 0.00 | 3,192.00 | 2,553.60 | 638.40 |
| DECEMBER | 2015 | 40.90 | $95.00 | 3,885.50 | 0.00 | 3,885.50 | 3,108.40 | 777.10 |
| JANUARY | 2016 | 23.00 | $95.00 | 2,185.00 | 0.00 | 2,185.00 | 1,748.00 | 437.00 |
| FEBRUARY | 2016 | 21.90 | $95.00 | 2,080.50 | 0.00 | 2,080.50 | 1,664.40 | 416.10 |
| MARCH | 2016 | 30.40 | $95.00 | 2,888.00 | 0.00 | 2,888.00 | 2,310.40 | 577.60 |
| APRIL | 2016 | 27.90 | $95.00 | 2,650.50 | 0.00 | 2,650.50 | 0.00 | 2,650.50 |
| MAY | 2016 | 37.60 | $95.00 | 3,572.00 | 0.00 | 3,572.00 | 0.00 | 3,572.00 |
| JUNE | 2016 | 26.80 | $95.00 | 2,546.00 | 5.13 | 2,551.13 | 0.00 | 2,551.13 |
| JULY | 2016 | 20.20 | $95.00 | 1,919.00 | 0.00 | 1,919.00 | 0.00 | 1,919.00 |
| AUGUST | 2016 | 8.90 | $95.00 | 845.50 | 0.00 | 845.50 | 0.00 | 845.50 |
| SEPTEMBER | 2016 | 6.20 | $95.00 | 589.00 | 0.00 | 589.00 | 0.00 | 589.00 |
| OCTOBER | 2016 | 8.70 | $95.00 | 826.50 | 0.00 | 826.50 | 0.00 | 826.50 |
| NOVEMBER | 2016 | 3.10 | $95.00 | 294.50 | 0.00 | 294.50 | 0.00 | 294.50 |
| DECEMBER | 2016 | 5.80 | $95.00 | 551.00 | 0.00 | 551.00 | 0.00 | 551.00 |
| JANUARY | 2017 | 4.60 | $95.00 | 437.00 | 0.00 | 437.00 | 0.00 | 437.00 |
| FEBRUARY | 2017 | 2.60 | $95.00 | 247.00 | 0.00 | 247.00 | 0.00 | 247.00 |
| MARCH | 2017 | 11.60 | $95.00 | 1,102.00 | 0.00 | 1,102.00 | 0.00 | 1,102.00 |
| APRIL | 2017 | 4.60 | $95.00 | 437.00 | 0.00 | 437.00 | 0.00 | 437.00 |
| MAY | 2017 | 3.80 | $95.00 | 361.00 | 0.00 | 361.00 | 0.00 | 361.00 |
| JUNE | 2017 | 3.00 | $95.00 | 285.00 | 0.00 | 285.00 | 0.00 | 285.00 |
| JULY | 2017 | 0.30 | $95.00 | 28.50 | 0.00 | 28.50 | 0.00 | 28.50 |
| AUGUST 2017 TO CLOSE | | 45.10 | $95.00 | 4,284.50 | 0.00 | 4,284.50 | 0.00 | 4,284.50 |
| **TOTAL MICHENAUD** | | **406.90** | **$95.00** | **38,655.50** | **10.31** | **38,665.81** | **14,143.60** | **24,522.21** |
| AURORA BLOOM (NOTE) | | | | | | | | |
| OCTOBER | 2015 | 26.80 | $50.00 | 1,340.00 | 27.48 | 1,367.48 | 1,072.00 | 295.48 |
| NOVEMBER | 2015 | 20.80 | $50.00 | 1,040.00 | 50.00 | 1,090.00 | 832.00 | 258.00 |
| DECEMBER | 2015 | 26.10 | $50.00 | 1,305.00 | 0.00 | 1,305.00 | 1,044.00 | 261.00 |
| JANUARY | 2016 | 17.10 | $50.00 | 855.00 | 0.00 | 855.00 | 684.00 | 171.00 |
| FEBRUARY | 2016 | 18.70 | $50.00 | 935.00 | 0.00 | 935.00 | 748.00 | 187.00 |
| MARCH | 2016 | 15.50 | $50.00 | 775.00 | 10.00 | 785.00 | 620.00 | 165.00 |
| APRIL | 2016 | 17.80 | $50.00 | 890.00 | 20.00 | 910.00 | 0.00 | 910.00 |
| MAY | 2016 | 22.60 | $50.00 | 1,130.00 | 50.00 | 1,180.00 | 0.00 | 1,180.00 |
| JUNE | 2016 | 28.90 | $50.00 | 1,445.00 | 0.00 | 1,445.00 | 0.00 | 1,445.00 |
| JULY | 2016 | 26.20 | $50.00 | 1,310.00 | 0.00 | 1,310.00 | 0.00 | 1,310.00 |
| AUGUST | 2016 | 17.40 | $50.00 | 870.00 | 0.00 | 870.00 | 0.00 | 870.00 |
| SEPTEMBER | 2016 | 9.60 | $50.00 | 480.00 | 0.00 | 480.00 | 0.00 | 480.00 |
| OCTOBER | 2016 | 8.00 | $50.00 | 400.00 | 10.00 | 410.00 | 0.00 | 410.00 |
| NOVEMBER | 2016 | 17.30 | $50.00 | 865.00 | 0.00 | 865.00 | 0.00 | 865.00 |
| DECEMBER | 2016 | 8.80 | $50.00 | 440.00 | 10.00 | 450.00 | 0.00 | 450.00 |
| JANUARY | 2017 | 17.50 | $50.00 | 875.00 | 40.00 | 915.00 | 0.00 | 915.00 |
| FEBRUARY | 2017 | 11.80 | $50.00 | 590.00 | 20.00 | 610.00 | 0.00 | 610.00 |
| MARCH | 2017 | 17.30 | $50.00 | 865.00 | 0.00 | 865.00 | 0.00 | 865.00 |
| APRIL | 2017 | 6.00 | $50.00 | 300.00 | 0.00 | 300.00 | 0.00 | 300.00 |
| MAY | 2017 | 5.60 | $50.00 | 280.00 | 0.00 | 280.00 | 0.00 | 280.00 |
| JUNE | 2017 | 7.90 | $50.00 | 395.00 | 0.00 | 395.00 | 0.00 | 395.00 |
| JULY | 2017 | 6.30 | $50.00 | 315.00 | 0.00 | 315.00 | 0.00 | 315.00 |
| AUGUST 2017 TO CLOSE | | 49.80 | $50.00 | 2,490.00 | 20.00 | 2,510.00 | 0.00 | 2,510.00 |
| **TOTAL BLOOM** | | **403.80** | **$50.00** | **20,190.00** | **257.48** | **20,447.48** | **5,000.00** | **15,447.48** |

# RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
## SUMMARY of the RECEIVER and HIS AGENTS' FEES & COSTS
## FOR THE PERIOD from OCTOBER 2015 through AUGUST 2017 TO CLOSE

| BOOKKEEPING & PARALEGAL (Continued): | | HOURLY | TOTAL | DIRECT | TOTAL FEES | PAYMENTS | AMOUNT |
|---|---|---|---|---|---|---|---|
| KRISTINA GODINEZ | HOURS | RATE | FEES | COSTS | and COSTS | MADE | OWING |
| AUGUST 2017 TO CLOSE | 12.90 | $34.00 | 438.60 | 0.00 | 438.60 | 0.00 | 438.60 |
| TOTAL GODINEZ | 12.90 | $34.00 | 438.60 | 0.00 | 438.60 | 0.00 | 438.60 |
| KAYLYN KELLY | | | | | | | |
| OCTOBER 2015 | 3.80 | $27.00 | 102.60 | 0.00 | 102.60 | 82.08 | 20.52 |
| NOVEMBER 2015 | 1.10 | $27.00 | 29.70 | 0.00 | 29.70 | 23.76 | 5.94 |
| FEBRUARY 2016 | 1.20 | $35.00 | 42.00 | 0.00 | 42.00 | 33.60 | 8.40 |
| TOTAL KELLY | 6.10 | $28.57 | 174.30 | 0.00 | 174.30 | 139.44 | 34.86 |
| KASSANDRA MENDEZ | | | | | | | |
| MAY 2016 | 1.20 | $30.00 | 36.00 | 0.00 | 36.00 | 0.00 | 36.00 |
| AUGUST 2016 | 4.10 | $30.00 | 123.00 | 0.00 | 123.00 | 0.00 | 123.00 |
| TOTAL MENDEZ | 5.30 | $30.00 | 159.00 | 0.00 | 159.00 | 0.00 | 159.00 |
| BOOKKEEPING/PARALEGAL | 835.00 | $71.40 | $59,617.40 | $267.79 | $59,885.19 | $19,283.04 | $40,602.15 |

(NOTE):  RATES ON THE ACTUAL TIME SLIPS INDICATE THE NORMAL BILLING RATE BEFORE THE DISCOUNT

# RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
## SUMMARY of the RECEIVER and HIS AGENTS' FEES & COSTS
## FOR THE PERIOD from OCTOBER 2015 through AUGUST 2017 TO CLOSE

| ADMINISTRATIVE COSTS: | | FUTURE RECORD STORAGE | TELE-PHONE | POSTAGE & FORMS | FACSIMILE & XEROX | DELIVERY, FEDEX, etc | TOTAL ADM COSTS | PAYMENTS MADE | AMOUNT OWING |
|---|---|---|---|---|---|---|---|---|---|
| OCTOBER | 2015 | $0.00 | $2.04 | $212.51 | $519.80 | $77.50 | $811.85 | $811.85 | $0.00 |
| NOVEMBER | 2015 | 0.00 | 1.68 | 19.18 | 148.90 | 0.00 | 169.76 | 169.76 | 0.00 |
| DECEMBER | 2015 | 0.00 | 7.31 | 45.03 | 237.20 | 99.78 | 389.32 | 389.32 | 0.00 |
| JANUARY | 2016 | 0.00 | 1.96 | 18.10 | 38.20 | 62.07 | 120.33 | 120.33 | 0.00 |
| FEBRUARY | 2016 | 0.00 | 0.00 | 20.72 | 45.30 | 60.33 | 126.35 | 126.35 | 0.00 |
| MARCH | 2016 | 0.00 | 0.00 | 14.06 | 25.50 | 129.72 | 169.28 | 169.28 | 0.00 |
| APRIL | 2016 | 0.00 | 0.00 | 20.02 | 66.90 | 39.12 | 126.04 | 39.12 | 86.92 |
| MAY | 2016 | 0.00 | 1.18 | 10.25 | 76.20 | 212.22 | 299.85 | 212.22 | 87.63 |
| JUNE | 2016 | 0.00 | 0.00 | 22.10 | 59.10 | 112.58 | 193.78 | 112.58 | 81.20 |
| JULY | 2016 | 0.00 | 0.51 | 7.00 | 39.50 | 25.84 | 72.85 | 25.84 | 47.01 |
| AUGUST | 2016 | 0.00 | 0.00 | 90.98 | 321.10 | 0.00 | 412.08 | 0.00 | 412.08 |
| SEPTEMBER | 2016 | 0.00 | 0.00 | 3.74 | 16.90 | 0.00 | 20.64 | 0.00 | 20.64 |
| OCTOBER | 2016 | 0.00 | 0.00 | 4.20 | 5.10 | 69.83 | 79.13 | 69.83 | 9.30 |
| NOVEMBER | 2016 | 0.00 | 0.00 | 9.19 | 27.60 | 0.00 | 36.79 | 0.00 | 36.79 |
| DECEMBER | 2016 | 0.00 | 0.00 | 0.93 | 20.90 | 0.00 | 21.83 | 0.00 | 21.83 |
| JANUARY | 2017 | 0.00 | 0.00 | 47.00 | 20.10 | 22.84 | 89.94 | 22.84 | 67.10 |
| FEBRUARY | 2017 | 0.00 | 0.00 | 0.00 | 19.40 | 0.00 | 19.40 | 0.00 | 19.40 |
| MARCH | 2017 | 0.00 | 0.00 | 2.08 | 81.50 | 25.62 | 109.20 | 25.62 | 83.58 |
| APRIL | 2017 | 0.00 | 0.00 | 2.33 | 40.60 | 70.24 | 113.17 | 70.24 | 42.93 |
| MAY | 2017 | 0.00 | 0.00 | 0.00 | 10.60 | 0.00 | 10.60 | 0.00 | 10.60 |
| JUNE | 2017 | 0.00 | 0.00 | 88.75 | 8.20 | 0.00 | 96.95 | 0.00 | 96.95 |
| JULY | 2017 | 0.00 | 0.00 | 0.00 | 9.40 | 0.00 | 9.40 | 0.00 | 9.40 |
| TOTAL to JULY 31, 2017 | | 0.00 | 14.68 | 638.17 | 1,838.00 | 1,007.69 | 3,498.54 | 2,365.18 | 1,133.36 |
| AUGUST 2017 TO CLOSE | | 9,500.00 | 0.00 | 361.56 | 248.40 | 0.00 | 10,109.96 | 0.00 | 10,109.96 |
| **TOTAL ADMIN COSTS** | | **$9,500.00** | **$14.68** | **$999.73** | **$2,086.40** | **$1,007.69** | **$13,608.50** | **$2,365.18** | **$11,243.32** |

K:\1700FLDR\1716 SEC v. SCI\[TOTAL FEES.AUGUST 2017 TO CLOSE  (THE RECEIVER + STAFF).xls]Sheet1          9/6/2017 17:58

EXHIBIT "G"

# THE RECEIVERSHIP ESTATE of SECURED CAPITAL INVESTMENTS, LLC
# FINAL FEES & COSTS

| | PROFESSIONAL FEES & COSTS: | FIRST APPLICATION | | | TOTAL SECOND APPL. | TOTAL FIRST + SECOND APPL 's |
|---|---|---|---|---|---|---|
| | | PAID | HELDBACK | TOTAL | | |
| 1 | DIAMOND McCARTHY LLP | $91,941 | $20,608 | $112,550 | $81,243 | $193,793 |
| 2 | THOMPSON COBURN LLP | 119,278 | 0 | 119,278 | 0 | 119,278 |
| 3 | CLIFTONLARSENALLEN LLP | 3,353 | 0 | 3,353 | 0 | 3,353 |
| 4 | THE RECEIVER | 69,129 | 17,275 | 86,404 | 99,135 | 185,539 |
| 5 | MOSIER & COMPANY, INC. | 63,936 | 15,984 | 79,920 | 141,358 | 221,277 |
| 6 | LoBUGLIO & SIGMAN | 0 | 0 | 0 | 47,054 | 47,054 |
| 7 | HSNO | 30,117 | 7,529 | 37,646 | 7,060 | 44,706 |
| 8 | TOTAL PROFESSIONAL FEES | $377,753 | $61,396 | $439,149 | $375,850 | $814,999 |
| | | | | (A) | (B) | |

9        TOTAL AMOUNT REQUESTED in the FINAL ACCOUNT & REPORT **(A + B) =**    $437,246

K:\1700FLDR\1716 SEC v. SCI\[EXPECTED FINAL FEES & COSTS.xlsx]FAR        9/6/2017 17:38

EXHIBIT 2

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
# SECURED CAPITAL INVESTMENTS, LLC
## RECEIVERSHIP;  CIVIL COURT DOCKET NO. 5:15-cv-01792-VAP-KK
### REPORTING PERIOD from APRIL 1, 2016 through AUGUST 20, 2017

| FUND ACCOUNTING  (See Instructions): | | SCHEDULE | DETAIL | SUBTOTAL | GRAND TOTAL |
|---|---|---|---|---|---|
| Line 1 | Beginning Balance of the Fund as of April 1, 2016 | | | | $573,219 |
| | *Increases in Fund Balances:* | | | | |
| Line 2 | **Business Income  (Receipts)** | Schedule 1 | | | 180,508 |
| Line 3 | **Cash and Securities** | | | | 0 |
| Line 4 | **Interest / Dividend Income** | Schedule 1 | | | 514 |
| Line 5 | **Business Asset Liquidation** | Schedule 1 | | | 1,782,800 |
| Line 6 | **Personal Asset Liquidation** | | | | 0 |
| Line 7 | **Third-Party Litigation** | | | | 0 |
| Line 8 | **Miscellaneous - Other** | Schedule 1 | | | 44,176 |
| | **Total Funds Available (Lines 1-8)** | | | | 2,581,217 |
| | *Decreases in Fund Balance:* | | | | |
| Line 9 | **Disbursements to Investors** | | | | 0 |
| Line 10 | **Disbursements for Receivership Operations** | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | Schedule 2 | | $284,848 | |
| Line 10b | *Business Asset Expenses* | Schedule 3 | | 94,805 | |
| Line 10c | *Personal Asset Liquidation* | | | 0 | |
| Line 10d | *Investment Expenses* | | | 0 | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1. Attorney Fees | Schedule 2 | $91,941 | | |
| | 2. Litigation Expenses | | 0 | | |
| | *Total Third-Party Litigation Expenses* | | | 91,941 | |
| Line 10f | *Tax Administrator Fees and Bonds* | Schedule 2 | | 0 | |
| Line 10g | *Federal and State Tax Payments* | | | 0 | |
| | **Total Disbursements for Receivership Operations** | | | | 471,594 |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | | |
| | 1. Fees: | | | | |
| | Fund Administrator | | | | |
| | Independent Distribution Consultant (IDC) | | 0 | | |
| | Distribution Agent | | 0 | | |
| | Consultants | | 0 | | |
| | Legal Advisors | | | | |
| | Tax Advisors | | | | |
| | 2. Administrative Expenses | | 0 | | |
| | 3. Miscellaneous | | 0 | | |
| | Total Plan Development Expenses | | | 0 | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | | |
| | 1. Fees: | | | | |
| | Fund Administrator | | 0 | | |
| | Independent Distribution Consultant (IDC) | | 0 | | |
| | Distribution Agent | | 0 | | |
| | Consultants  (Forensic Accountants) | | 0 | | |
| | Legal Advisors | | 0 | | |
| | Tax Advisors | | 0 | | |
| | 2. Administrative Expenses | | 0 | | |
| | 3. Investor Identification: | | | | |
| | Notice/Publishing Approved Plan | | 0 | | |
| | Claimant Identification | | 0 | | |
| | Claims Processing | | 0 | | |
| | Web Site Maintenance / Call Center | | 0 | | |
| | 4. Fund Administrator Bond | | 0 | | |
| | 5. Miscellaneous | | 0 | | |
| | 6. Fair Account for Investor Restitution | | 0 | | |
| | (FAIR) Reporting Expenses | | 0 | | |
| | *Total Plan Implementation Expenses* | | | 0 | |
| | **Total Disbursements for Distribtion Expenses Paid by the Fund** | | | | 0 |
| Line 12 | **Disbursements to Court / Other:** | | | | |
| Line 12a | *Investment Expenses / Court Registry Investment System (DRIS) Fees* | | | 0 | |
| Line 12b | *Federal Tax Payments* | | | 0 | |
| | **Total Disbursements to Court / Other** | | | | 0 |
| | **Total Funds Disbursed  (Lines 9-12)** | | | | 471,594 |
| Line 13 | **Ending Balance of the Fund as of August 20, 2017** | | | | $2,109,623 |

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
## SECURED CAPITAL INVESTMENTS, LLC
### RECEIVERSHIP;  CIVIL COURT DOCKET NO. 5:15-cv-01792-VAP-KK
#### REPORTING PERIOD from APRIL 1, 2016 through AUGUST 20, 2017

| | | | | | |
|---|---|---|---|---|---|
| **Line 14** | **Ending Balance of Fund - Net Assets:** | | | | |
| Line 14a | *Cash & Cash Equivalents* | Schedule 4 | | | $2,109,623 |
| Line 14b | *Investments* | | | | 0 |
| Line 14c | *Other Assets or Uncleared Funds* | | | | 0 |
| | **Total Ending Balance of Fund - Net Assets** | | | | $2,109,623 |

| | | DETAIL | SUBTOTAL | GRAND TOTAL |
|---|---|---|---|---|
| **OTHER SUPPLEMENTAL INFORMATION:** | | | | |
| | *Report of Items NOT to be Paid by the Fund:* | | | |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | $0 | |
| | Independent Distribution Consultant (IDC) | | 0 | |
| | Distribution Agent | | 0 | |
| | Consultants | | 0 | |
| | Legal Advisors | | 0 | |
| | Tax Advisors | | 0 | |
| | 2. Administrative Expenses | | 0 | |
| | 3. Miscellaneous | | 0 | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | $0 |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund* | | | |
| | 1. Fees: | | | |
| | Fund Administrator | | 0 | |
| | Independent Distribution Consultant (IDC) | | 0 | |
| | Distribution Agent | | 0 | |
| | Consultants | | 0 | |
| | Legal Advisors | | 0 | |
| | Tax Advisors | | 0 | |
| | 2. Administrative Expenses | | 0 | |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan | | 0 | |
| | Claimant Identification | | 0 | |
| | Claims Processing | | 0 | |
| | Web Site Maintenance / Call Center | | 0 | |
| | 4. Fund Administrator Bond | | 0 | |
| | 5. Miscellaneous | | 0 | |
| | 6. FAIR Reporting Expenses | | 0 | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | 0 |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | 0 |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | $0 |
| **Line 16** | **Disbursements to Court / Other Not Paid by the Fund:** | | | |
| Line 16a | *Investment Expenses / CRIS Fees* | | $0 | |
| Line 16b | *Federal Tax Payments* | | 0 | |
| | **Total Disbursements to Court / Other Not Paid by the Fund:** | | | $0 |
| **Line 17** | **DC & State Tax Payments** | | | $0 |
| **Line 18** | **Number of Claims:** | | | |
| Line 18a | Number of Claims Received This Reporting Period ............................................................ | | | 0 |
| Line 18b | Number of Claims Received Since Inception of Fund ........................................................ | | | 91 |
| **Line 19** | **Number of Claimants / Investors:** | | | |
| Line 18a | *Number of Claimants / Investors Paid This Reporting Period* ............................................... | | | 0 |
| Line 18b | *Number of Claimants / Investors Paid Since Inception of Fund* .......................................... | | | 0 |

Receiver:

By: _(signature)_ 

(signature)

Robert P. Mosier
(printed name)

Date: 9-6-17

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for
# SECURED CAPITAL INVESTMENTS, LLC
### RECEIVERSHIP; CIVIL COURT DOCKET NO. 5:15-cv-01792-VAP-KK
#### REPORTING PERIOD from APRIL 1, 2016 through AUGUST 20, 2017

## SCHEDULE 1

| LINE 2 | BUSINESS INCOME: | | | |
|---|---|---|---|---|
| | | RENT REVENUE from STORAGE UNITS | | $68,478 |
| | | RENT REVENUE from APARTMENTS | | 45,119 |
| | | TOTAL RENT REVENUE | | 113,597 |
| | | TAX LIEN PAYOFFS | | 34,125 |
| | | REAL ESTATE INVESTMENT TRUST INCOME | | 32,786 |
| | | TOTAL BUSINESS INCOME | | $180,508 |

| LINE 4 | INTEREST / DIVIDEND INCOME: | RECEIPTS of INTEREST & DIVIDENDS | $514 |
|---|---|---|---|

LINE 5    BUSINESS ASSET LIQUIDATION:

| REAL ESTATE SALES: | GROSS SALES PRICE | LESS DEPOSITS PREVIOUSLY RECEIVED | MORTGAGE PAID-OFF INCLUDING ACCRUED INTEREST | SALES COMMISS-IONS and AUCTION EXPENSES | REAL and OTHER PROPERTY TAXES | ALL OTHER ESCROW COSTS | NET REAL ESTATE INCOME |
|---|---|---|---|---|---|---|---|
| STOR-ALL, TUCSON, AZ | $1,200,000 | $120,000 | $531,429 | $58,736 | $130,924 | $14,992 | $343,919 |
| 38th STREET APTS, JACKSONVILLE, FL | 1,107,700 | 110,770 | 532,118 | 99,725 | 36,272 | 4,754 | 324,061 |
| JUSTINA COURT, JACKSONVILLE, FL | 880,000 | 88,000 | 266,060 | 61,205 | 20,741 | 3,991 | 440,003 |
| HI-SECURITY, RICHLAND, MS | 781,000 | 78,100 | 0 | 68,520 | 51,720 | 3,374 | 579,286 |
| MEDICAL FAC, EXCELSIOR SPRS, MO | 55,000 | 0 | 0 | 6,000 | 36,932 | 0 | 12,068 |
| SINGLE FAM RES, PADUCAH, KY | 24,200 | 2,500 | 0 | 2,563 | 651 | 0 | 18,486 |
| APARTMENTS, EXCELSIOR SPRS, MO | 19,250 | 0 | 0 | 1,780 | 2,606 | 0 | 14,864 |
| SINGLE FAM RES, OWENSBORO, KY | 1,100 | 0 | 0 | 100 | 87 | 0 | 913 |
| REAL ESTATE SALES THIS PERIOD | $4,068,250 | $399,370 | $1,329,607 | $298,629 | $279,933 | $27,111 | 1,733,600 |

| | PERSONAL PROPERTY SALES: | | |
|---|---|---|---|
| | PROPERTY TAX LIENS (NET) | $39,750 | |
| | VEHICLE & OTHER | 9,450 | |
| | TOTAL PERSONAL PROPERTY SALES | | 49,200 |
| | TOTAL BUSINESS ASSET LIQUIDATION | | $1,782,800 |

| LINE 8 | MISCELLANEOUS - OTHER: | | |
|---|---|---|---|
| | | TURNOVER of FUNDS from TEMPORARY RECEIVER | $29,040 |
| | | OTHER RECEIPTS | 15,136 |
| | | TOTAL MISCELLANEOUS - OTHER RECEIPTS | $44,176 |

## SCHEDULE 2

| LINE 10a | DISBURSEMENTS to RECEIVER or OTHER PROFESSIONALS: | | |
|---|---|---|---|
| | RECEIVERS: | PERMANENT RECEIVER, ROBERT P. MOSIER and ACCOUNTANT & STAFF | $135,453 |
| | | TEMPORARY RECEIVER, CLAIRE SCHENK and ACCOUNTANT & STAFF | 119,278 |
| | TOTAL RECEIVERS | | 254,731 |
| | FORENSIC ACCOUNTANTS: | HAGEN STREIFF et al | 30,117 |
| | TOTAL DISBURSEMENTS to RECEIVER or OTHER PROFESSIONALS | | $284,848 |

| LINE 10e | THIRD-PARTY LITIGATION EXPENSES: | | |
|---|---|---|---|
| | 1. ATTORNEY FEES | DIAMOND McCARTHY LLP | $91,941 |

| LINE 10f | TAX ADMINISTRATOR FEE and BONDS | | |
|---|---|---|---|
| | INCOME TAX PREPARER: | LoBUGLIO & SIGMAN, CPA's | $0 |

Exhibit 2, Page 056

# STANDARDIZED FUND ACCOUNTING REPORT (CASH BASIS) for

# SECURED CAPITAL INVESTMENTS, LLC

## RECEIVERSHIP;  CIVIL COURT DOCKET NO. 5:15-cv-01792-VAP-KK

### REPORTING PERIOD from APRIL 1, 2016 through AUGUST 20, 2017

### (CONTINUED)

| SCHEDULE 3 |
|---|

| LINE 10b | BUSINESS ASSET EXPENSES: | UTILITIES | $45,298 |
|---|---|---|---|
| | | REPAIRS & MAINTENANCE | 14,418 |
| | | PAYROLL & PAYROLL TAXES | 14,124 |
| | | INSURANCE | 10,428 |
| | | MOVING & STORAGE | 6,114 |
| | | TELEPHONE & INTERNET | 1,597 |
| | | ALL OTHER DISBURSEMENTS | 2,826 |
| | | TOTAL BUSINESS ASSET EXPENSES | $94,805 |

| SCHEDULE 4 |
|---|

LINE 14a   CASH & CASH EQUIVALENTS:

| NAME of BANK | ACCT # | NAME of OWNING ENTITY and ACCOUNT DESCRIPTION | | BALANCE |
|---|---|---|---|---|
| EAST WEST BANK | 3886 | SECURED CAPITAL INVESTMENTS | GENERAL | $150,633 |
| EAST WEST BANK | 4607 | SECURED CAPITAL INVESTMENTS | REAL ESTATE | 21,044 |
| EAST WEST BANK | 3935 | HI SECURITY STORAGE | GENERAL | 60,791 |
| EAST WEST BANK | 3942 | HI SECURITY UHAUL | UHAUL | (186) |
| REGIONS BANK | 7200 | HI SECURITY STORAGE | GENERAL | 17,914 |
| EAST WEST BANK | 4593 | HI SECURITY STORAGE | REAL ESTATE | 282,386 |
| EAST WEST BANK | 3872 | JUSTINA COURT APARTMENTS | GENERAL #1 | 8,535 |
| REGIONS BANK | 1308 | JUSTINA COURT APARTMENTS | GENERAL #2 | 338 |
| EAST WEST BANK | 4600 | JUSTINA COURT APARTMENTS | REAL ESTATE | 528,002 |
| BANK OF MIDWEST | 4705 | SUPERIOR APARTMENTS | GENERAL | 7,832 |
| EAST WEST BANK | 4614 | SUPERIOR APARTMENTS | REAL ESTATE | 14,864 |
| EAST WEST BANK | 3914 | SUPERIOR PARK RCF | GENERAL #1 | 11,460 |
| BANK OF MIDWEST | 5041 | SUPERIOR PARK RCF | GENERAL #2 | 2,859 |
| BANK OF MIDWEST | 4908 | SUPERIOR PARK RCF | REAL ESTATE | 10,928 |
| EAST WEST BANK | 3830 | STOR-ALL DISC STORAGE | GENERAL | 44,945 |
| EAST WEST BANK | 4579 | STOR-ALL DISC STORAGE | REAL ESTATE | 463,920 |
| EAST WEST BANK | 3879 | 38th STREET APARTMENTS | GENERAL #1 | 43,531 |
| REGIONS BANK | 0999 | 38th STREET APARTMENTS | GENERAL #2 | 2,452 |
| EAST WEST BANK | 4586 | 38th STREET APARTMENTS | REAL ESTATE | 437,373 |
| TOTAL CASH & CASH EQUIVALENTS: | | | | $2,109,623 |

EXHIBIT 3

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## SUMMARY of PAYMENTS to be MADE to CLASSES of ALLOWED CLAIMS:

TOTAL CASH AVAILABLE for ALL ALLOWED CLAIMS $2,109,621.00

| PROPOSED DISTRIBUTIONS by CLASS of CLAIM: | Amount of Claims | Amount to be Paid | % of Claims |
|---|---|---|---|
| CLASS 1 (ADMINISTRATIVE PROFESSIONAL FEES) | $437,245.79 | $437,245.79 | 100.000% |
| CLASS 2 (OTHER ADMINISTRATIVE CLAIMS) | 22,400.41 | 22,400.41 | 100.000% |
| CLASS 3 (TAX CLAIMS) | 61,336.41 | 0.00 | 0.000% |
| CLASS 4 (INVESTOR CLAIMS) | 13,989,345.05 | 1,649,974.80 | 11.795% |
| CLASS 5 (NONINVESTOR CLAIMS) | 21,869.10 | 0.00 | 0.000% |
| TOTAL PROPOSED DISTRIBUTIONS | $14,532,196.76 | $2,109,621.00 | |

## CLASS 1:  ADMINISTRATIVE PROFESSIONAL FEES

| | | Fees Paid | Expenses Paid | Holdback | Proposed Distribution Amount |
|---|---|---|---|---|---|
| 1 | **a. Previous Fee Award and Holdbacks** | | | | |
| 2 | Receiver | $67,693.60 | $1,434.99 | $17,275.00 | $17,275.00 |
| 3 | Mosier & Company, Inc. | 63,936.00 | 0.00 | 15,983.50 | 15,983.50 |
| 4 | Diamond McCarthy LLP | 82,434.00 | 9,507.10 | 20,608.40 | 20,608.40 |
| 5 | HSNO | 30,117.00 | 0.00 | 7,529.00 | 7,529.00 |
| 6 | Total Previous Fee Awards & Holdbacks | $244,180.60 | $10,942.09 | $61,395.90 | |

| | | Fees Incurred | Expenses Incurred | Total Requested | |
|---|---|---|---|---|---|
| 7 | | | | | |
| 8 | **b. Current Fee Request** | | | | |
| 9 | Receiver | $87,145.30 | $11,989.74 | $99,135.04 | 99,135.04 |
| 10 | Mosier & Company, Inc. | 141,357.50 | 0.00 | 141,357.50 | 141,357.50 |
| 11 | Diamond McCarthy LLP | 76,304.80 | 4,938.55 | 81,243.35 | 81,243.35 |
| 12 | HSNO | 7,060.00 | 0.00 | 7,060.00 | 7,060.00 |
| 13 | LoBuglio & Sigman | 46,654.00 | 400.00 | 47,054.00 | 47,054.00 |
| 14 | Total Current Fee Request | $358,521.60 | $17,328.29 | $375,849.89 | |

| | | | |
|---|---|---|---|
| 15 | **c. Total Holdbacks plus Current Fee Request** | | $437,245.79 |

## CLASS 2:  OTHER ADMINISTRATIVE CLAIMS

| | Claim # | Employee | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|---|
| | | Missouri RCF Payroll | $16,500.00 | $16,500.00 |
| 1 | 214 | Nagham Dahi | 1,080.00 | 1,080.00 |
| 2 | 217 | Jacinto Rodriguez | 1,861.96 | 1,861.96 |
| 3 | 217 | Jacinto Rodriguez | 1,124.63 | 1,124.63 |
| 4 | 218 | Jarrod Zozaya | 905.28 | 905.28 |
| 5 | 218 | Jarrod Zozaya | 768.54 | 768.54 |
| 6 | 218 | Jarrod Zozaya | 70.00 | 70.00 |
| 7 | 219 | Mary Young | 90.00 | 90.00 |
| | | TOTAL WAGE CLAIMS | $22,400.41 | $22,400.41 |

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

Exhibit 3, Page 058

## CLASS 3:  TAX CLAIMS

| | Taxing Authority | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|
| 1 | IRS | $2,162.17 | $0.00 |
| 2 | EDD | 5,605.91 | 0.00 |
| | FRANCHISE TAX BOARD RE: | | |
| 3 | SECURED CAPITAL INVESTMENTS, LLC | 1,290.31 | 0.00 |
| 4 | RENAISSANCE MANAGEMENT, LLC | 17,566.33 | 0.00 |
| 5 | DESTINY WITH A PURPOSE, LLC | 8,337.74 | 0.00 |
| 6 | CHEF RAVI RECIPES, LLC | 7,436.10 | 0.00 |
| 7 | LOGOS REAL ESTATE HOLDINGS, LLC | 3,802.87 | 0.00 |
| 8 | WORLD GARDENS CAFÉ, LLC | 3,728.87 | 0.00 |
| 9 | LOGOS MANAGEMENT GROUP, LLC | 2,658.87 | 0.00 |
| 10 | LOGOS INSURANCE GROUP, LLC | 2,298.86 | 0.00 |
| 11 | INDESTRUCTIBLE PEAK MANAGEMENT, INC. | 2,228.86 | 0.00 |
| 12 | 9327 FAIRWAY VIEW PLACE, LLC | 2,170.66 | 0.00 |
| 13 | LOGOS WEALTH ADVISORS, INC. | 2,048.86 | 0.00 |
| | TOTAL TAX CLAIMS | $61,336.41 | $0.00 |

## CLASS 4:  INVESTOR CLAIMS

| | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 1 | 1 | Akerboom | $202,000.00 | 1.444% | $23,824.91 | 11.795% |
| 2 | 2 | Alexander | 194,000.00 | 1.387% | 22,881.35 | 11.795% |
| 3 | 3 | Alfred | 209,681.26 | 1.499% | 24,730.88 | 11.795% |
| 4 | 4 | Allbritten (Galop) | 129,766.81 | 0.928% | 15,305.36 | 11.795% |
| 5 | 5 | Alvarez | 40,000.00 | 0.286% | 4,717.80 | 11.795% |
| 6 | 7 | Annunziato | 10,000.00 | 0.071% | 1,179.45 | 11.795% |
| 7 | 9 | Babb | 100,000.00 | 0.715% | 11,794.51 | 11.795% |
| 8 | 10 | Bartoo-Hernandez | 31,710.55 | 0.227% | 3,740.10 | 11.795% |
| 9 | 11 | Belk | 75,000.00 | 0.536% | 8,845.88 | 11.795% |
| 10 | 12 | Bennett | 259,062.00 | 1.852% | 30,555.10 | 11.795% |
| 11 | 13 | Burger | 24,311.86 | 0.174% | 2,867.46 | 11.795% |
| 12 | 14 | Burgoon | 353,000.00 | 2.523% | 41,634.62 | 11.795% |
| 13 | 16 | Carlsen | 49,000.00 | 0.350% | 5,779.31 | 11.795% |
| 14 | 17 | Carlson | 300,000.00 | 2.144% | 35,383.53 | 11.795% |
| 15 | 18 | Carroll | 6,583.18 | 0.047% | 776.45 | 11.795% |
| 16 | 19 | Carson | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 17 | 20 | Cavallaro | 128,854.16 | 0.921% | 15,197.72 | 11.795% |
| 18 | 21 | Cefalia | 1,500.00 | 0.011% | 176.92 | 11.795% |
| 19 | 22 | Cintra Do Prado, A | 255,860.00 | 1.829% | 30,177.44 | 11.795% |
| 20 | 23 | Cintra Do Prado, T | Disallowed by Court | | | |
| 21 | 24 | Claiborne | 398,000.00 | 2.845% | 46,942.15 | 11.795% |
| 22 | 25 | Cook | 188,000.00 | 1.344% | 22,173.68 | 11.795% |
| 23 | 26 | Davenport | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 24 | 27 | DeCarlo | 79,606.63 | 0.569% | 9,389.21 | 11.795% |
| 25 | 28 | Delgadillo | 479,334.67 | 3.426% | 56,535.18 | 11.795% |

(Continued)

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## CLASS 4:  INVESTOR CLAIMS  (CONTINUED)

| | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 26 | 30 | Dienes | 102,000.00 | 0.729% | 12,030.40 | 11.795% |
| 27 | 31 | Dominick | 408,675.00 | 2.921% | 48,201.22 | 11.795% |

Exhibit 3  Page 050

| | Claim # | Last Name | Amount | % of Total | Amount | % of Claim |
|---|---|---|---|---|---|---|
| 28 | 32 | Duffield | 200,000.00 | 1.430% | 23,589.02 | 11.795% |
| 29 | 33 | Esparza | 75,656.00 | 0.541% | 8,923.26 | 11.795% |
| 30 | 34 | Faubion | 400.00 | 0.003% | 47.18 | 11.795% |
| 31 | 35 | Fortin | 98,533.59 | 0.704% | 11,621.55 | 11.795% |
| 32 | 36 | Franchi | 105,815.52 | 0.756% | 12,480.42 | 11.795% |
| 33 | 38 | Gavigan | 200,000.00 | 1.430% | 23,589.02 | 11.795% |
| 34 | 39 | Gulizia | 590,314.98 | 4.220% | 69,624.76 | 11.795% |
| 35 | 40 | Gulizia-Knight | 49,123.23 | 0.351% | 5,793.84 | 11.795% |
| 36 | 42 | Hensley | 118,380.00 | 0.846% | 13,962.34 | 11.795% |
| 37 | 43 | Hernandez | 215,761.84 | 1.542% | 25,448.05 | 11.795% |
| 38 | 43A | Hernandez | 337,000.00 | 2.409% | 39,747.50 | 11.795% |
| 39 | 44 | Huang | 37,078.57 | 0.265% | 4,373.24 | 11.795% |
| 40 | 45 | Jacobs | 580,000.00 | 4.146% | 68,408.16 | 11.795% |
| 41 | 46 | Jacobs | 208,603.63 | 1.491% | 24,603.78 | 11.795% |
| 42 | 47 | Kemp | 7,634.00 | 0.055% | 900.39 | 11.795% |
| 43 | 47A | Kemp | 20,000.00 | 0.143% | 2,358.90 | 11.795% |
| 44 | 48 | Kirby | 80,000.00 | 0.572% | 9,435.61 | 11.795% |
| 45 | 49 | Klein | 393,532.16 | 2.813% | 46,415.19 | 11.795% |
| 46 | 50 | Krackow | 172,452.53 | 1.233% | 20,339.93 | 11.795% |
| 47 | 51 | Kunkle | 85,000.00 | 0.608% | 10,025.33 | 11.795% |
| 48 | 52 | Langley | 59,700.00 | 0.427% | 7,041.32 | 11.795% |
| 49 | 53 | Lee | 315,769.99 | 2.257% | 37,243.53 | 11.795% |
| 50 | 54 | Line | 234,265.22 | 1.675% | 27,630.44 | 11.795% |
| 51 | 56 | Macek | 60,000.00 | 0.429% | 7,076.71 | 11.795% |
| 52 | 57 | Marhefka | 58,500.00 | 0.418% | 6,899.79 | 11.795% |
| 53 | 58 | Mata | 62,000.00 | 0.443% | 7,312.60 | 11.795% |
| 54 | 59 | McBurney | 144,992.86 | 1.036% | 17,101.20 | 11.795% |
| 55 | 61 | Meyer | 141,712.13 | 1.013% | 16,714.25 | 11.795% |
| 56 | 62 | Munoz | 225,000.00 | 1.608% | 26,537.65 | 11.795% |
| 57 | 63 | Nadler | 124,386.07 | 0.889% | 14,670.73 | 11.795% |
| 58 | 64 | Nicholson | 101,909.50 | 0.728% | 12,019.73 | 11.795% |
| 59 | 65 | Nunez | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 60 | 66 | Page | 12,928.52 | 0.092% | 1,524.86 | 11.795% |
| 61 | 67 | Polite | 98,383.29 | 0.703% | 11,603.83 | 11.795% |
| 62 | 68 | Quiroz | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 63 | 69 | Richards | 111,035.80 | 0.794% | 13,096.13 | 11.795% |
| 64 | 70 | Saracho | 44,637.08 | 0.319% | 5,264.73 | 11.795% |
| 65 | 70A | Barker-Signor | 13,963.76 | 0.100% | 1,646.96 | 11.795% |
| 66 | 70B | Saracho | 215,339.96 | 1.539% | 25,398.29 | 11.795% |
| 67 | 71 | Searfoss | 25,000.00 | 0.179% | 2,948.63 | 11.795% |
| 68 | 72 | Shenton | 3,960.00 | 0.028% | 467.06 | 11.795% |
| 69 | 73 | Sherman | 242,500.00 | 1.733% | 28,601.69 | 11.795% |
| 70 | 75 | Starr | 75,000.00 | 0.536% | 8,845.88 | 11.795% |
| 71 | 76 | Sweeney | 30,000.00 | 0.214% | 3,538.35 | 11.795% |
| 72 | 76A | Sweeney | 71,000.00 | 0.508% | 8,374.10 | 11.795% |
| 73 | 76B | Sweeney | 105,000.00 | 0.751% | 12,384.24 | 11.795% |

(Continued)

# RECEIVERSHIP ESTATE of
# SECURED CAPITAL INVESTMENTS
# LIST of CLAIMS & PROPOSED DISTRIBUTIONS

## CLASS 4:  INVESTOR CLAIMS  (CONTINUED)

| | Claim # | Last Name | Claim Amount | % of Total | Proposed Distribution Amount | % of Claim |
|---|---|---|---|---|---|---|
| 74 | 77 | Tejas | 783,177.45 | 5.598% | 92,371.95 | 11.795% |
| 75 | 78 | Thompson | 50,000.00 | 0.357% | 5,897.26 | 11.795% |
| 76 | 80 | Valadez | 550,000.00 | 3.932% | 64,869.81 | 11.795% |
| 77 | 82 | Vaughn | 240,000.00 | 1.716% | 28,306.83 | 11.795% |
| 78 | 83 | Wagner | 108,000.00 | 0.772% | 12,738.07 | 11.795% |
| 79 | 83A | Wandel | 300,000.00 | 2.144% | 35,383.53 | 11.795% |
| 80 | 85 | Ware | 136,000.00 | 0.972% | 16,040.53 | 11.795% |
| 81 | 87 | Wong | 50,000.00 | 0.357% | 5,897.26 | 11.795% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 82 | 88 | Workman | 190,000.00 | 1.358% | | 22,409.57 | 11.795% |
| 83 | 89 | Young | 300,000.00 | 2.144% | | 35,383.53 | 11.795% |
| 84 | 90 | Zbinden | 229,110.00 | 1.638% | | 27,022.40 | 11.795% |
| 85 | 91 | Zuniga | 30,000.00 | 0.214% | | 3,538.35 | 11.795% |
| 86 | 93 | Carrillo | 46,861.38 | 0.335% | | 5,527.07 | 11.795% |
| 87 | 94 | Delgadillo | 61,333.33 | 0.438% | | 7,233.97 | 11.795% |
| 88 | 95 | Galop | 0.00 | 0.000% | | 0.00 | 0.000% |
| 89 | 97 | Haver-Habib | 240,000.00 | 1.716% | | 28,306.83 | 11.795% |
| 90 | 98 | Krausman | 50,500.00 | 0.361% | | 5,956.23 | 11.795% |
| 91 | 100 | Adad | 92,000.00 | 0.658% | | 10,850.95 | 11.795% |
| 92 | 101 | Chan | 72,778.04 | 0.520% | | 8,583.81 | 11.795% |
| 93 | 102 | Clymer | 0.00 | 0.000% | | 0.00 | 0.000% |
| 94 | 136 | Jackson-Gewirtz | 54,000.00 | 0.386% | | 6,369.04 | 11.795% |
| 95 | N/N | Suber | 27,368.50 | 0.196% | | 3,227.98 | 11.795% |
| | | TOTAL ALLOWED INVESTOR CLAIMS | $13,989,345.05 | 100.000% | | $1,649,974.80 | 11.795% |

## CLASS 5:  NON-INVESTOR CLAIMS

| | Claim # | Vender | Claim Amount | Proposed Distribution Amount |
|---|---|---|---|---|
| 1 | 203 | Platte County Public Adminstrator (for RCF) | $4,840.72 | $0.00 |
| 2 | 205 | Billy Jack May | 570.00 | 0.00 |
| 3 | 206 | Access Done Easy LLC | 1,091.83 | 0.00 |
| 4 | 207 | EVCO Wholesale Food Corp. | 7,351.15 | 0.00 |
| 5 | 208 | Armine Pogosyan | 500.00 | 0.00 |
| 6 | 209 | Vend Lease Company, Inc. | 1,761.65 | 0.00 |
| 7 | 211 | Precision Air Conditioning & Mechanical | 250.38 | 0.00 |
| 8 | 212 | Gym Management Services | 600.00 | 0.00 |
| 9 | 213 | City of Excelsior Springs, Missouri | 1,370.73 | 0.00 |
| 10 | 215 | Kevin Fry | 818.90 | 0.00 |
| 11 | 216 | Sysco | 2,396.15 | 0.00 |
| 12 | | Ron Young | 317.59 | 0.00 |
| | | TOTAL GENERAL UNSECURED CLAIMS | $21,869.10 | $0.00 |

indows\INetCache\Content.Outlook\M27ZKDRX\[LIST OF SCI CLAIMS 9-22-17.xlsx]DISTRIBUTE    9/25/2017 9:23

Exhibit 3, Page 061

EXHIBIT 4

## PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (the "Agreement") is entered into as of September 5, 2017 by and between IRA Services Trust Company, Custodian FBO: Barbara H. Valadez (the "Purchaser"), and Robert P. Mosier, the Receiver of Secured Capital Investments, LLC and its affiliates and subsidiaries (the "Seller"). The Purchaser and the Seller are referred to herein collectively as the "Parties."

## RECITALS

WHEREAS, the Securities and Exchange Commission initiated an action against Secured Capital investments LLC on September 3, 2015, entitled *Securities and Exchange Commission v. Secured Capital Investments, LLC, et al.*, presently pending before the United States District Court, Central District of California, as Case No. CV15-01792-VAP(KKx) (the "SEC Action").

WHEREAS, the Seller desires to sell all of the estate's right, title and interest in the membership interest of 1.5 limited liability company units (the "Units") in Landwin Partners Fund I, LLC ("Fund I");

WHEREAS, the Purchaser is an existing investor in Fund I and desires to acquire additional units in Fund I;

WHEREAS, pursuant to Sections 15.4 and 16.1 of the Fund I Operating Agreement granting members of Fund I a right of first refusal on any member's sale of units, the Seller notified Fund I of its desire to sell the Units, specifying the terms and conditions of the offer to sell the Units, and Fund I in turn notified all other Fund I members of Seller's offer;

WHEREAS, the Purchaser was the only Fund I member who expressed interest in purchasing the Units pursuant to the Seller's terms within the prescribed time period; and

WHEREAS, the Purchaser desires to purchase, and the Sellers desire to sell, the Units pursuant to the Seller's terms.

NOW, THEREFORE, in consideration of the promises and of the mutual representations, warranties, and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1

# AGREEMENT

1.    <u>Court Approval</u>.  This Agreement is conditioned on entry of an order in the SEC Action authorizing the Receiver to enter into this Agreement and to sell the Units.

2.    <u>Purchase and Sale</u>.  Subject to the terms and conditions of this Agreement, Seller hereby sells, assigns, transfers and delivers to the Purchaser, and the Purchaser hereby purchases from the Seller, all right, title and interest in the Units owned by the Seller for the total purchase price of $8,000 (the "Purchase Price"). Within 5 days of Court approval of this Agreement: (a) the Purchaser shall deliver to the Seller the Purchase Price via cashier's check, wire transfer, or other means mutually agreeable to the Parties; and (b) upon receipt of the Purchase Price, the Seller shall deliver to the Purchaser any and all documents in the possession or control of the Seller that relate to ownership of the Units, including Unit certificates.  The Seller hereby acknowledges and confirms that payment of the Purchase Price by the Purchaser represents full and final consideration for the Units and that Seller shall not be entitled to any further consideration of payment with respect to the Units, except as set forth herein.

3.    <u>As-Is Sale</u>. Upon Court approval of this Agreement and payment for the Units, as provided in Sections 1 and 2 of this Agreement, the Purchaser will acquire  the Units, as-is, where-is, without warranty or representation.

4.    <u>Seller's Authority</u>.  The Seller represents that it has full power and authority to enter into this  Agreement, subject to Court approval.  This Agreement has been duly and validly executed and delivered by, and is the valid, legal and binding obligation of, the Seller, subject to Court approval.

5.    <u>Purchaser's Authority</u>.  The Purchaser represents that it has full power and authority to enter into this Agreement, and has taken all action necessary to authorize the transactions effected hereby.  Except for consents already obtained, no consents, approvals, orders or authorizations of any third party, including governmental bodies, are known or believed to be required for the execution, delivery, or performance of this Agreement by the Purchaser.  This Agreement has been duly and validly executed and delivered by, and is the valid, legal and binding obligation of, the Purchaser.

6.    <u>Transfer of Units</u>. The Seller consents to the transfer of the Units contemplated in this Agreement, and withdraws as a Member of Fund I, effective upon Court approval and the payment for the Units, as provided in Sections 1 and 2 of this Agreement.

7.    <u>No Liability to Receiver</u>.  Purchaser acknowledges and agrees that the Seller is entering into this Agreement solely in his capacity as Receiver in the SEC

2

Action and has no obligation, liability or responsibility in his individual capacity to Purchaser.

8.     <u>Governing Law and Dispute Resolution</u>.  This Agreement shall be governed by the laws of the State of California as to all matters, including but not limited to matters of its validity, construction, effect, and performance, except that no effect shall be given to California's choice of law principles.  Any disputes arising out of, relating to, or in connection with this Agreement or any subsequent breach of this Agreement shall be resolved by the United States District Court presiding over the SEC Action, which shall maintain jurisdiction over the SEC Action for the purpose of enforcing this Agreement.

9.     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties.  This Agreement may not be amended or supplemented except in a writing signed by the Parties.  All prior oral and written agreements, if any, are expressly superseded hereby and are of no further force or effect.

10.     <u>Further Acts</u>.  Each Party agrees to execute such additional documents or to provide such additional information as may be reasonably requested by the other Party to carry out the provisions of this Agreement.

11.     <u>Section Headings</u>.  The section headings contained in this Agreement are for convenience only, and will not in any way affect the interpretation of this Agreement.

12.     <u>Preparation</u>.  This Agreement has been carefully read and reviewed by each Party, and the contents of this Agreement are known, understood and agreed to by each, and each has had a full and thorough discussion of each and every provision of this Agreement with its respective attorney (as applicable).  The Parties acknowledge the full opportunity to contribute to the preparation of this Agreement, and no Party shall be considered to have drafted the Agreement.

13.     <u>Counterparts</u>.  This Agreement may be executed in counterparts.  A fax copy of a signature on this Agreement shall be conclusive evidence of the signing Party's agreement hereto.

[SIGNATURES ON THE FOLLOWING PAGE]

Exhibit 4, Page064

IN WITNESS THEREOF, the Parties have entered into this Agreement as of September 5, 2017.

Purchaser                                        Seller

_____                        _____

By:   Barbara H. Valadez                         By:   Robert P. Mosier

      Its:_____                            Its:   Receiver

4

IN WITNESS THEREOF, the Parties have entered into this Agreement as of September 5, 2017.

Purchaser                                    Seller

_____                    _____

By:  Martin M. Valadez                       By:  Robert P. Mosier

Its: _Ira Services Trust Company,_           Its:  Receiver
_Custodian, FBO: Martin M. Valadez_

Exhibit 4, Page066

EXHIBIT 5

1   KATHY BAZOIAN PHELPS (State Bar No. 155564)
2   kphelps@diamondmccarthy.com
    DIAMOND MCCARTHY LLP
3   1999 Avenue of the Stars, Suite 1100
    Los Angeles, California 90067-4402
4   Telephone: (310) 651-2997
5
6   Counsel for Robert P. Mosier,
    Permanent Receiver
7
8                   UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10
11  SECURITIES AND EXCHANGE              Case No. CV15-01792 VAP (KKx)
12  COMMISSION,
                                          [PROPOSED] ORDER GRANTING
13            Plaintiff,                   RECEIVER'S MOTION TO: (1)
                                          APPROVE RECEIVER'S FINAL
14                                        REPORT AND ACCOUNTING;  (2)
    PAUL MATA, DAVID KAYATTA,             APPROVE FINAL DISTRIBUTION
15  MARIO PINCHEIRA, SECURED              PLAN; (3) SELL OR ABANDON
    CAPITAL INVESTMENTS, LLC,             PROPERTY; (4) CLOSE THE
16  LOGOS REAL ESTATE HOLDINGS,           RECEIVERSHIP; (5) DISCHARGE
    LLC, LOGOS WEALTH ADVISORS,           THE RECEIVER;  AND (6)
17  INC., and LIFETIME ENTERPRISES,       AUTHORIZE DESTRUCTION OF
    LLC (dba LOGOS LIFETIME               RECEIVERSHIP RECORDS AND
18  UNIVERSITY),                          MISCELLANEOUS PROPERTY
19
20            Defendants
21                                        Date:   November 6, 2017
22                                        Time:   2:00 p.m.
                                          Place:  350 W. 1st St.,
23                                                 Courtroom 8A, 8th Floor
24                                                 Los Angeles, CA 90012
25
26
27
28

                                  1

The matter of the Receiver's Motion for Order to: (1) Approve Final Report and Accounting; (2) Approve Final Distribution Plan; (3) Sell or Abandon Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize Destruction of Receivership Records and Miscellaneous Property (the "Motion") filed by Robert P. Mosier, the permanent receiver ("Receiver") for Secured Capital Investments, LLC, Logos Real Estate Holdings, LLC, Logos Wealth Advisors, Inc., and Lifetime Enterprises, LLC (dba Logos Lifetime University), as well as Indestructible Peak Management, Inc., Renaissance Management, LLC, 9327 Fairway View Place, LLC, Logos Management Group, LLC, Logos Insurance Group, Inc., World Gardens Café, LLC, Chef Ravi Recipes, LLC, Destiny With a Purpose, LLC, and their subsidiaries and affiliates including Justina Court LLC and Superior Park RCF, LLC (collectively, the "Receivership Entities") came on regularly for determination at the above-referenced date, and place before the Honorable Virginia A. Phillips, Chief United States District Judge presiding.  The Court has reviewed and considered the Motion and all pleadings and papers filed in support thereof, and finds that notice of the Motion was appropriate and that the receivership estate has been fully administered. For good cause appearing therefor,

**IT IS ORDERED THAT:**

1.      The Receiver's Motion is **GRANTED** in all respects.

2.       The Receiver's Final Report and Account attached as Exhibit "1" to the Motion is approved. All actions and activities taken by or on behalf of the Receiver and all payments made by the Receiver in connection with the administration of the Receivership Estate are hereby confirmed and approved.

3.      The Receiver's Standardized Fund Accounting Report attached as Exhibit "2" to the Motion is approved.

4.      The Receiver's Distribution Plan substantially in the form attached as Exhibit "3" to the Motion is approved and the Receiver is authorized to distribute all assets of the Receivership Estate in the following priority: (a) pay all allowed

administrative expenses and approved fees and expenses of his professionals as a
first priority payment of assets from the estate; (b) make a final distribution of all
remaining assets of the Receivership to the allowed administrative claims and claims
of Investors based on the constructive trust imposed pursuant to prior order; and (c)
subordinate payment of all other claims against the estate, including pre-receivership
claims of taxing agencies and pre-receivership claims of general unsecured creditors,
to the allowed investor claims and make no distribution thereon until after payment
in full of all estate administrative expenses and allowed Investor claims.

5.    The Receiver is authorized to turn over to the California Department of
Financial Services Bureau of Unclaimed Property those distributions to claimants
which are not negotiated within sixty (60) days of the date of issuance of the check
or are otherwise deemed void, and any other surplus funds. As to those funds to be
turned over to the California Department of Financial Services, to the extent
possible, the Receiver may remit those funds in the name of the party to whom the
distributions were due so that those persons, or their heirs or successors, may claim
those funds in the future.

4.    The Receiver is authorized to sell the estate's interest in Landwin
Partners Fund I, LLC pursuant to the sale agreement attached as Exhibit "4" to the
Motion.

5.    The Receiver is authorized to abandon the remaining nominal assets of
the estate including the stock in IE Crowd, the promissory notes and liens identified
in the Motion, and the interest in Destiny with a Purpose.

6.    The Receiver is authorized to take all steps necessary or appropriate to
complete the administration of the Receivership and its assets in accordance with the
relief granted in the Motion.

7.    The Receiver is authorized to retain the books and records necessary to
support the tax returns filed by the Receiver for a period of five (5) years and the
medical records in Missouri, and to thereafter destroy those books and records, and

the Receiver is authorized to retain a reserve of $9,500 to pay for the storage and destruction of the records.

8.     The Receiver is authorized to destroy, or otherwise dispose of, all books, records, computer equipment, other computer related-devices, and other items related to the Receivership in the Receiver's discretion and at such time as he deems proper if within thirty (30) days after written notice to the Securities and Exchange Commission, the Commission does not take custody of such records and other items.

9.     Effective upon the Receiver filing a Closing Declaration in which he attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership with the exception of the ongoing record storage costs, the Receiver and his agents, employees, members, officers, independent contractors, attorneys, representatives, predecessors, successors and assignees are: (i) discharged; (ii) released from all claims and liabilities arising out of and/or pertaining to the Receivership herein; and (iii) relieved of all duties and responsibilities pertaining to the Receivership previously established in this action.

10.     All persons are enjoined from commencing or prosecuting, without leave of this Court, any action against the Receiver or his agents in connection with or arising out of the Receiver's or his agents' services to this Court in this Receivership. Neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the Receiver's administration of this Receivership Estate.

11.     The Court shall retain jurisdiction over any and all matters relating to the Receiver and the Receivership Estate, including any matters relating to the distribution of funds received by the Receiver in connection with his obligations as Receiver or otherwise received after the Receivership is closed, and to the extent any dispute arises concerning the Receiver's administration of the Receivership Estate or

Exhibit 5, Page 070

[PROPOSED] ORDER GRANTING RECEIVER'S MOTION

to the extent any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to this Receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim. The Court expressly retains jurisdiction for the purpose of (a) implementing and enforcing the provisions of this Order, including but not limited to for the purpose of enforcing injunctive relief; and (b) reopening the case to administer any subsequently obtained assets.

12.     This Receivership shall be closed without further order from this Court effective upon the Receiver filing a Closing Declaration in which the Receiver attests that he has completed the final distribution as specified herein, filed the final necessary tax returns, and paid the final fees and costs of the Receivership with the exception of the ongoing record storage costs.

13.  Notice of the hearing on the Motion under Local Rule 66-7 is hereby deemed sufficient and approved if completed as described in the Motion, timely served on the parties to the action and known potentially interested parties, including Investor and Non-Investor Claimants, and with at least 40 days of notice prior to the hearing on the Motion. Notice of any modifications to the Receiver's original Proposed Order is further deemed sufficient and approved if a copy of the Court's Order on the Motion is posted on his website within fourteen (14) calendar days of being issued.

DATED:

_____
VIRGINIA A. PHILLIPS
Chief United States District Judge

EXHIBIT 6

KATHY BAZOIAN PHELPS (State Bar No. 155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone: (310) 651-2997

*Counsel for Robert P. Mosier,*
*Permanent Receiver*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>PAUL MATA, DAVID KAYATTA, MARIO PINCHEIRA, SECURED CAPITAL INVESTMENTS, LLC, LOGOS REAL ESTATE HOLDINGS, LLC, LOGOS WEALTH ADVISORS, INC., and LIFETIME ENTERPRISES, LLC (*dba* LOGOS LIFETIME UNIVERSITY),<br><br>Defendants | Case No. CV15-01792 VAP (KKx)<br><br>**NOTICE OF:**<br><br>**(A) MOTION TO: (1) APPROVE RECEIVER'S FINAL REPORT AND ACCOUNTING;  (2) APPROVE FINAL DISTRIBUTION PLAN; (3) SELL OR ABANDON PROPERTY; (4) CLOSE THE RECEIVERSHIP; (5) DISCHARGE THE RECEIVER;  AND (6) AUTHORIZE DESTRUCTION OF RECEIVERSHIP RECORDS AND MISCELLANEOUS PROPERTY**<br><br>**AND**<br><br>**(B) SECOND AND FINAL FEE APPLICATION**<br><br>Date:   November 6, 2017<br>Time:   2:00 p.m.<br>Place:   First Street Courthouse<br>            350 W. 1st Street<br>            Courtroom No. 8A, 8th Floor<br>            Los Angeles, CA 90012 |

1

1   PLEASE TAKE NOTICE that on November 6,  2017, commencing at 2:00

2   p.m. or as soon thereafter as the parties may be heard in the above-entitled Court

3   located at 350 W. 1st St., Courtroom 8A, Los Angeles, California 90012, Robert P.

4   Mosier, as Permanent Receiver for Defendants Secured Capital Investments, LLC

5   and its affiliates and subsidiaries ("SCI"), has filed a Motion to: (1) Approve Final

6   Report and Accounting; (2) Approve Final Distribution Plan; (3) Sell or Abandon

7   Property; (4) Close the Receivership; (5) Discharge the Receiver; and (6) Authorize

8   Destruction of Receivership Records and Miscellaneous Property ("Receivership

9   Closing Motion").

10   A copy of the Receiver's Final Report and Accounting is attached to the

11   Motion as Exhibit "1" (the "FAR"). The FAR accounts for the operational and

12   financial aspects of SCI is for the timeframe of October 8, 2015 (date of

13   appointment) through August 31, 2017, with exceptions noted where applicable, is

14   based on the following:

15   1.     The Receiver sold eight assets for a gross recovery of $4,068,250.  The

16   largest of these was the Stor-All Storage facility in Tucson for $1,200,000 and the

17   smallest was a single-family residence in Owensboro, Kentucky for $1,100.  After

18   paying mortgages, delinquent property taxes, and costs, the net to the estate was

19   $2,132,970.  Other assets sales generated $50,200.  One additional asset remains

20   unsold:  The REIT for $8,000 that is presented in this FAR for approval by the Court

21   and overbid.  Combined, the sale of real properties and assets generated a net total

22   (excluding the sale of the REIT that has yet to occur) of $2,183,170.

23   2.     The Receiver abandoned seventeen assets for which there was no

24   market or demand.  Each asset was investigated and the comments regarding the lack

25   of liquidity are set forth in the Receiver's Final Report.  Many of these are loans

26   made to individuals who were void of traditional credit credentials.  Others are just

27   bad investments.

28

Exhibit 6, Page 073

RECEIVER'S MOTION TO CLOSE RECEIVERSHIP

3.      In total, these assets/investments generated another $370,368 for the Receivership Estate from rents and rental income.  The total of the expenditures related to the properties and assets were $256,579.

4.      The professional fees for the Receiver, his counsel and accountants paid to date is $376,789.  These amounts were paid net of a holdback that were ordered by the Court.

5.      The Receiver is holding $2,109,621 to be used to pay final fees, final costs to conclude the estate and make final distributions to the Investors.  The approximate amount of cash that may be available for distribution to investors or $1,649,974.  Based on a total investment of $13,989,345, the expected return is 11.8%.

6.      Fees and costs for the Receiver for the duration of the case (right at two years) is $96,111.80.  Craig Collins, CPA and Ryan Baker, Senior Financial Analyst had fees of $221,277.00 including projected fees to close. The Receiver's field agent and bookkeeping staff is responsible for banking activity including making all deposits, issuing checks including the final checks, and reconciling accounts. Included in this category is a retired bank president, Jim LeSieur who served as a field agent on site as well as analyzing the defunct loan portfolio.  The fees for the field agent were $16,345.00; the bookkeeping department's fees and costs are $59,885.19 including prospective fees to close.  The administrative costs are $13,601.50.  The total for the Receiver and his staff plus costs are $407,227.49.  Of this total, $273,232.71 remains unpaid including holdbacks.  The blended hourly rate for the Receiver and his staff is $173.

7.      Diamond McCarthy, counsel for the Receiver, had fees and costs for the duration of the case of $193,793.  Of this, $91,941 has been paid leaving a balance of $101,852 in unpaid fees and costs.  LoBuglio and Sigman prepared the tax returns for 3 years.  The fees and costs to prepare these tax returns was $47,054 all of which remains unpaid.  HSNO was brought in to prepare a reconciliation of all pre-

1  Receiver receipts and disbursements for SCI.  The fees and costs for HSNO were

2  $44,706 of which $30,117 has been paid leaving an unpaid balance of $14,589.  The

3  total fees and costs for the professionals in this case were $815,403 (including the

4  fees and costs of Claire Schenk, the temporary receiver) of which $378,157 has been

5  paid and the balance owing is $437,246.

6       A copy of the Receiver's Distribution Plan is attached to the Motion as Exhibit

7  "3." The Distribution Plan seeks authorization to (a) pay all allowed administrative

8  expenses and approved fees and expenses of his professionals as a first priority

9  payment of assets from the estate; (b) make a final distribution of all remaining

10 assets of the Receivership estimated to be in the total amount of about $1,672,375.21

11 to the allowed administrative claims and claims of Investors, and (c) subordinate

12 payment of all other claims against the estate, including pre-receivership claims of

13 taxing agencies and pre-receivership claims of general unsecured creditors, to the

14 allowed investor claims and make no distribution thereon until after payment in full

15 of all estate administrative expenses and allowed Investor claims.

16

17 **Second and Final Fee Application**

18      PLEASE TAKE FURTHER NOTICE THAT the Receiver has filed his

19 Second and Final Fee Application, seeking final approval of interim fees and costs

20 previously paid and approval of additional fees and costs through the closing of the

21 case as follows:

22   A. **Prior Fee Request**

| Professional | Fees Paid | Expenses Paid | Holdback |
|---|---|---|---|
| Receiver | $ 67,693.60 | $1,434.99 | $17,275.00 |
| Mosier & Company, Inc. | $ 63,936.00 | | $15,983.50 |
| Diamond McCarthy LLP | $ 82,434.00 | $9,507.10 | $20,608.40 |
| HSNO | $ 37,646.00 | | $7,529.00 |
| Thompson Coburn  LLP | $116,801.90 | $2,475.90 | $0 |

| CliftonLarsenAllen LLP | $ 3,352.50 | | $0 |
| **Totals:** | **$371,864.00** | **$13,417.99** | **$61,395.90** |

B. **Current Fee Request**

The accrued fees and costs of the professionals incurred during the reporting period of April 1, 2016, through the close of the case, which are the subject of a pending fee application, are as follows:

The requested compensation and reimbursement is summarized as follows:

| Professional | Fees Incurred | Costs | Total Requested |
|---|---|---|---|
| Receiver | $87,145.30 | $2,489.74 | $89,635.04 |
| Reserve for records | | $9,500.00 | $9,500.00 |
| Mosier & Company Inc. | $141,357.50 | $0 | $141,357.50 |
| Diamond McCarthy LLP | $76,304.80 | $4,938.55 | $81,243.35 |
| HSNO | $7,060.00 | | $7,060.00 |
| LoBuglio & Sigman | $46,654.00 | $400.00 | $47,054.00 |
| **Total Requested** | **$358,521.60** | **$17,328.29** | **$375,849.89** |

Therefore, the total additional amounts to be paid to all professionals for fees, inclusive of prior holdbacks of $61,395.00, is $419,917.50 and reimbursement of costs of $17,328.29.

Complete copies of the Closing Motion and the Second and Final Fee Application are posted at the Receiver's website at www.receivershipofsci.com.

The Receivership Closing Motion and Second and Final Fee Application are made pursuant to Local Rule 66-7 and other applicable authority and is made and based on this Notice, the Motions, the supporting Memorandum attached thereto, the files and records in this case, and on such other evidence and arguments of counsel as may be presented by the Receiver hereafter in further support of the Motions.

PLEASE TAKE FURTHER NOTICE that pursuant to Local Rule 7-9, any party who opposes the Motions must, not later than 21 days before the date of the

hearing on the motions, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a written statement that that party will not oppose the motions. Evidence presented in all opposing papers shall comply with the requirements of L.R. 7-6, 7-7 and 7-8.

DATED: September 26, 2017         DIAMOND McCARTHY LLP


                                 By:   /s/ *Kathy Bazoian Phelps*
                                       Kathy Bazoian Phelps
                                       Counsel for Robert P. Mosier
                                       Permanent Receiver